## Case No. 9,347.

### MAYHEW v. DAVIS.

[4 McLean, 213;[1] 5 West. Law J. 304.]

Circuit Court, D. Illinois. Dec. Term, 1847.

TAXATION—TAX TITLE—REQUISITES — DEMAND BY COLLECTOR—JUDGMENT.

1. Under the revenue law of Illinois, passed February 26, 1839 [Laws 1839, p. 31], (the circuit court acting as a court of limited and special jurisdiction,) it is necessary to show that everything was done, and how done, that is required by law to be done, to give it jurisdiction.
[Cited in U. S. v. Pacific Railroad, 1 Fed. 102.]
[Cited in English v. People, 96 Ill. 567; Cooper v. Sunderland, 3 Iowa, 114; Chahoon v. Com., 20 Grat. 779; Barton v. Gilchrist, 19 W. Va. 234; Potts v. Cooley, 51 Wis. 355, 8 N. W. 154.]

2. A collector of taxes must make a demand for taxes upon the owner of land, before a judgment can properly be rendered against it.

This was an action of ejectment [by Eusebius Mayhew against Samuel H. Davis]. The defendant pleaded a special plea, setting up a tax title, acquired since the commencement of the action; in which plea he set out fully the record of the judgment of the Peoria circuit court against the land; the collector's report, on which judgment was rendered, together with notice and certificate of the publication thereof; the process or precept under which the land was sold by sheriff, and his deed from the sheriff to the land in controversy.

The collector's report was in the following form:

[State of Illinois v. Suit for Taxes. List of land and other real estate situated in the county of Peoria, and state of Illinois, on which taxes are due and remain unpaid, for the year 1842.][2]

| Patentees. | Description. | No. of acres. | Valuation. | Taxes. |
|---|---|---|---|---|
| Henry Martin, | do 9 N 7 E<br>N E 11 do<br>do    do | 100<br>do<br>do | do<br>960<br>do | do<br>4 32<br>do |

The costs already accrued on each of the foregoing tracts of land and town lots, are twelve cents.

Then follows the notice and certificate of publication, signed by John S. Zeiber, and indorsed on the back was a certificate of the

---

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [From 5 West. Law J. 304.]

collector, that said lands, etc., were assessed for taxes for the year 1842, for state and county purposes; that the taxes and costs thereon remain due and unpaid, and that the owners had no goods and chattels in his county on which he could levy for the payment of the same. The judgment and precept were in the form prescribed in the statute.

To the defendant's plea, the plaintiff filed a demurrer, alleging for cause, the want of jurisdiction in the circuit court to render said judgment, upon the facts set out in said plea. It was further agreed by the counsel, for the purpose of trying the question fully and fairly before the court, that the same objections might be made upon the demurrer, that could have been made to the record, etc., if the same were offered in evidence.

The following were the points made by the counsel for the plaintiff: (1) The record does not show that any demand was ever made by the collector for the payment of taxes, etc. (2) The judgment is void, being for a greater amount of taxes than the court was authorized in rendering by the law, and by the facts before the court.

A. Williams and B. S. Edwards, for plaintiff.

O. Peters and E. N. Powell, for defendant.

POPE, District Judge. This is an action of ejectment—special plea, setting up a tax title, under the act of the legislature of Illinois, of the 26th February, 1839, "concerning the public revenue." The defendant exhibits the proceedings before the circuit court of Peoria county, the judgment, execution, sale and deed by the sheriff; also, the report of the collector, giving a list of the land; that the owner had no personal property out of which to levy the taxes, and notice that he would move for judgment against the land upon which the taxes were due and unpaid. To this plea the plaintiff demurred.

When I consider the vast amount of property depending upon the question involved in this suit, I can not but feel the immense responsibility I incur; and this feeling is increased by the fact that my construction of the law is in conflict with that of the supreme court of Illinois, to whose decisions it is my duty to conform. I shall not attempt to overturn any of its decisions; but I dissent from its reasoning. That court allows great latitude of presumption in favor of the acts of the officers and persons engaged in the collection of taxes; I, on the contrary, hold them bound to show that they have acted in strict compliance with the law from which they derive their power. That court holds that some of the requirements of the law are directory; while I hold them to be material and essential. The defendant claims to hold the land in controversy (valued by the assessor at nine hundred and

sixty dollars) by virtue of a sale, at which he paid less than five dollars for it. This, then, is a claim of strict right, where a court would not grant a new trial; nor would a chancellor enforce such an unequal bargain. But it is said that the state must raise taxes; and that can not be done unless the courts give to the sales a liberal support. This has not been found necessary in other states, or by the general government, and yet their faith has not suffered. Purchases of tax titles have been esteemed a good investment; for if the land be redeemed, it must be on the payment of a hundred per cent., and if not, the owner of the land almost always is willing to extinguish the tax title by paying a premium upon the advance. By the 8th article of the constitution of Illinois (section 8) it is provided that no man's property shall be taken from him, but by the judgment of his peers, or the law of the land. The 20th section, same article, declares that "the mode of levying a tax shall be by valuation, so that every person shall pay a tax in proportion to the value of the property he or she has in his or her possession." What is a tax? It is not a debt. It is a contribution or contingent, which the citizen should pay to the support of the government under which he lives. It is the right and duty of the government to ascertain its amount, and make requisition therefor. This is done by making an estimate of the expenses of the government, the value of each one's property, and levying the tax accordingly. To accomplish this, legislation is necessary. So the people of Illinois, represented in general assembly, by the act of 26th February, 1839, consented to a tax of twenty cents on the one hundred dollars' valuation of their property, and also that the county commissioners' court might levy a tax for county purposes, not exceeding fifty cents on the hundred dollars, if the court should deem it necessary to defray the expenses of the county. The tax is to be collected. The legislature prescribes the modus operandi. One or more assessors for the county are to be appointed, whose duty it is to call upon each property holder for a list of his property—if not at home, a notice in writing must be left at his house, with some one over twelve years of age, notifying him to attend at some time and place specified in the notice, to give him a list of his taxable property. The list must be returned to the clerk of the county commissioners' court, and shall contain the names of the owners, with the valuation annexed to each piece of property. The next step is the appointment of a suitable person to act as collector; (this is the language of the law.) He is to call on the property holders for their taxes. If not paid, the tax payer is allowed twenty days to make payment, before the collector can employ coercion. This demand converts the tax into a debt, requiring the debtor to seek his creditor.

The tax payer could rest secure until the collector made the demand, which alone could put him in default. Without demand, and neglect or refusal to pay the taxes within twenty days, the collector could not proceed to levy on his goods and chattels, nor report him or his lands to the court as delinquent. When the tax payer shall have failed to pay on demand, or in twenty days thereafter, the collector may levy on his goods and chattels; and if he can find none, then he may return or report against the land to the court, and move for judgment.

It is here proper to pause on the inquiry, what is necessary to happen before the owner can be reported to the court as being in default, and the motion made for judgment against his land? I answer: First, the assessor must have listed his property for taxation; second, he must have valued it. These two facts are material and essential; because, without them, no tax could be levied, as no one but the assessor could take the list or value the property: without valuation no tax could be collected. In addition to this, two other facts are equally material and essential, viz: First, demand by the collector; and second, in default thereof, the collector must have levied on goods and chattels, if to be found. If all these things have been done, then the owner is in default. The collector is ready to bring his suit in the circuit court. The manner of doing this is to give notice of his intention to move for judgment for the sale of the delinquent property, and he is to make a report to the court. The 25th section gives the form of the list to be reported, but not of the facts to show to the court that the lands are subject to its jurisdiction. Those facts are to be found in the requirements of the law. Without the allegation of the necessary and material facts, to be set out in the report of the collector, the court can not render judgment. For the present, we will suppose that the collector reported to the court that the assessor listed and valued the property; that he (the collector) demanded the taxes, which were not paid; that he then sought in vain for goods and chattels of the owner—what faith and credit should the court bestow on the report? In other words, should the court require the facts to be proved, or receive them as true until the contrary is shown?

This is a grave question, upon which I do not feel myself called upon to express an opinion. When it becomes necessary for me to pass upon it, I hope my health will be better than it is now. It may not be out of place here to make some suggestions in regard to it. The faith and credit to be bestowed on the report of the collector, depend upon the character of this personage, who is appointed as a suitable person to act as collector. Is he a common law officer of any court? No. Does he form any part of the machinery of the common law? No. Are his duties general and permanent, or special and temporary? Special and temporary. Is his responsibility general or special? Special: this is to the state. His bond can only be sued for the use of the state. Is he not then an agent appointed by the state, for a particular object, and when that is accomplished, his agency ceases? Are not such agents bound to show that they have performed their duty, and how they have done it? But enough of this. These suggestions are thrown out only to awaken inquiry. I suppose the notice of the collector must be regarded as the process to bring parties before the court—the report of the collector, the declaration. Now, what must appear in a declaration? I answer, the facts essential to a recovery. It is impossible to presume that the court had proof before it, of any material fact not alleged in the declaration. Where the parties are properly before a court of common law jurisdiction, and the court is silent in regard to the evidence upon which it rendered its judgment, it will be presumed that the court had proof of the truth of all the allegations of the declaration, but none other. It will not be supposed that the court admitted, and acted on any matter de hors the declaration.

In the case at bar, the report of the collector avers the existence of only one of the material facts deemed by this court necessary to a recovery, namely, that he could find no goods and chattels upon which to levy—omitting to state, unless inferentially, that the assessor listed and valued the property, and omitting altogether any allegation of demand and refusal to pay the taxes. But the circuit court does not allow the presumption, that it received proof of the facts omitted in the report, because it expressly bases its judgment upon the report alone. It must be held, that the omission to state a fact material and essential to a recovery, is proof that it does not exist; therefore, no demand for the taxes was made by the collector. Hence, a judgment rendered upon that state of facts, is on an immaterial issue, and therefore inefficacious, even if rendered by a court of general common law jurisdiction. It is worthy of note, that the 43d section, which enumerates certain facts, some prima facie, and some conclusive, which are proved by the sheriff's deed, does not include in either class, demand by the collector. The existence of that fact, then, is not proved by the deed. That it is material and essential is too manifest to require proof. Indeed, it would be an insult to common sense to offer it. The court might here dismiss the subject, by deciding that the judgment and subsequent proceedings are void, because coram non judice, and therefore no defense to the action.

It was argued for the defendant, that this is an action in rem, not in personam. The court does not see what conclusion can be drawn from this position; for whether in rem or personam, the case must be brought legally before the court, before it can take jurisdiction, either of the thing, or person.

It was also urged, with an earnestness indicative of sincerity, that, admitting the judgment to be erroneous, it is still binding until reversed, and a sale on the execution will be sustained, and the purchaser hold the property, even if the judgment be afterward reversed. However this may be, where the court has jurisdiction by having the person or thing properly before it, it does not hold, where the court has not jurisdiction; a judgment in that case is void—a perfect nullity; and this is the case at bar. The circuit court had no jurisdiction. The 43d section gives a force to the sheriff's deed truly alarming. It takes from the man whose property has been sold, almost all defense. It matters not how corruptly or negligently the assessor and collector may have acted, he can not defend himself unless by making it appear that the land was not liable to taxation, that the taxes were paid, that the land was not listed and assessed for taxation, etc., etc. I advert to this section, to show how imperative it is on courts to exact of the ministerial officers, the greatest strictness in the performance of their duties, and require full proof that they have performed all the requirements of law, and how.

But, it is said that some of the requirements of the legislature are only directory, and may be dispensed with. Upon this, it may be remarked, that a judge should rarely (if ever) take upon himself to say that what the legislature required, is unnecessary. He may not see the necessity of it, still it is unsafe to assume that the legislature did not have a reason for it; perhaps it only aimed at uniformity. In that case, the judge can not interfere to defeat that object, however puerile it may appear. It is admitted that there are cases where the requirements may be deemed directory. But it may safely be affirmed that it can never be, where the act, or the omission of it, can by any possibility work advantage or injury (however slight) to any one affected by it. In such case it never can be committed. Does the circuit court, when executing the revenue law, act as a court of common law? It does not. It acts as a court of special and limited jurisdiction, and subject to the rules that govern courts of that character. The supreme court of the United States has so decided in the case of Thatcher v. Powell, 6 Wheat. [19 U. S.] 119. In that case, Chief Justice Marshall, in delivering the opinion of the court, says: "In summary proceedings, where the court exercises an extraordinary power under a special statute, prescribing a course, we think that course ought to be exactly observed, and those facts, especially, which give jurisdiction, ought to appear, in order to show that its proceedings are coram judice." "Previous to an order for the sale of lands for the non-payment of taxes, the sheriff is ordered to levy them by distress and sale of goods and chattels of the delinquent; and if there be no such goods and chattels, he is to report the same to the court,

as the foundation of any proceedings against the lands. By this act no jurisdiction is given to the court over the lands of a person who has failed to pay his taxes, until the sheriff shall report that there were no goods and chattels out of which the taxes may be made." It was urged in that case, that although the judgment might be erroneous, yet it was binding until reversed; but the court held it void. The court held, also, that it must appear that due notice was given. That case arose in Tennessee. There the report was made by the sheriff, a common law officer, and an officer of the court. In the case at bar, the report was made by the collector, not an officer of the common law, or of the court. In that case, the sheriff was held to a strict performance of his duty, and to afford evidence that he had done so. In the case of Walker v. Turner, 9 Wheat. [22 U. S.] 541, the supreme court of the United States says, "if the judgment be void, an execution or order of sale founded on it, is also void." Again, the same court, in the case of Williams v. Peyton [4 Wheat. (17 U. S.) 77], says: "In a sale of land for nonpayment of taxes, the marshal's deed is not even prima facie evidence that the pre-requisites required by law have been complied with, but the person claiming under it must show positively that they have been complied with." The same doctrine has been maintained in Missouri, Indiana, Ohio, Virginia, and most of the other states. Indeed, no departure from it, or conflict with, has been shown to this court in the argument, and none is supposed to exist.

It was contended at the bar that although the judgment is erroneous, still, until reversed, it will support the execution and sale. This is contradicted by the authorities just cited, and also by the case of Denning v. Corwin, 11 Wend. 648, 649, etc. In that case the supreme court of New York says that the court must have jurisdiction of the person and subject matter, or the proceedings will be void—this case was for partition of land; the judgment was held void because it did not appear that the requirements of the law were strictly pursued. The judgment was not erroneous, but void.

From the authorities here cited, and from numerous others, it appears that the circuit court, when executing the law of February 26th, 1839, concerning the revenue, acts as a court of limited and special jurisdiction, and therefore, bound to show that everything was done, and how done, that is required by law to be done, to give jurisdiction. That the legislature did not deem the circuit court, when executing the revenue laws, a court of common law, is manifested by the fact that it furnished to the court the forms for the judgment and final process, and further, denied to it the power to try the cases according to the course of the common law, but to "hear and determine them in a summary manner without pleading." And yet it is

said, that a court so trammeled and supplied with manufactured forms is a court of common law jurisdiction, and entitled to all presumption belonging to such courts. This is truly preposterous. For the reason that no demand was made by the collector for the taxes upon the owner, and no reason given for its omission, the judgment of the circuit court and other subsequent proceedings are void. Therefore, the law is with the demurrant. It does not appear that this point was presented to or considered by the supreme court of Illinois, either in the case of Atkins v. Hinman, 2 Gilman, 437, or Taylor v. People, Id. 349. Hence my opinion is not in conflict with those decisions.

Again there is another fatal defect in the defense. By the collector's report it appears that the land in controversy was valued by the assessor at $960 00; the judgment is for $4 44; the state tax amounts only to $1 92; I suppose the residue was for county purposes. But it no where appears that the county commissioners' court levied a tax at all; the power given to that court was discretionary, to levy a tax not exceeding fifty cents in the hundred dollars, or any less sum, or none at all. This point, also, does not seem to have been considered or decided by the supreme court of Illinois.