## WILEY VS. FLOURNOY AND RICE.

ASSESSMENT: *Illegal alteration of. Injunction on.*

The clerk and County Judge had no authority, under the revenue act of 1871, to change the valuation of land, as returned by the assessor, after the adjournment of the board of equalization; and where the assessment is so altered, the clerk will be enjoined from entering it on the tax books.

APPEAL from *Lincoln* Circuit Court in Chancery.

Hon. READ FLETCHER, Special Judge.

*Cunningham* for appellants.

*Pindalls*, contra.

HARRISON, J. :

This was a suit in equity by T. C. Flournoy and Clay Rice against Alfred Wiley as clerk of Lincoln county, to enjoin him

*Vol. xxx.—39.*

from entering on the tax books a false and fraudulent assessment of their lands and extending the taxes thereon.

The complaint alleged that the plaintiffs listed with the assessor in 1872 their lands, the tracts of which were severally appraised and assessed by him at their true value in money.

That the county board of equalization having met on the third Monday in September of said year, remained in session six days, and adjourned without making any change in the valuation of the tracts; that after the adjournment, the county judge and county clerk, having been so directed by the board, still proceeding in the matter of equalizing the valuation of the real property of the county, and whilst so engaged, at the residence of the county judge, privately and fraudulently erased the valuations returned by the assessor of a number of the tracts, which were specified in the complaint, and inserted in place thereof false valuations, much higher than the value of the tracts, by which the aggregate valuation of the tracts named, and of the plaintiffs' real property, was raised and increased above that returned by the assessor $23,473, and those raised valuations they placed in the columns of valuations equalized by the board.

And it further alleged that the defendant was threatening and going to enter such fraudulent valuations on the tax book for 1873, and to extend and charge the taxes according to the same, on $23,473 more than the plaintiff's lands were legally assessed at; and that if the plaintiffs did not pay the whole of the taxes so charged against the tracts according to such fraudulent valuation, the collector would sell the same for their payment, thereby clouding their title and giving rise to a multiplicity of suits.

The complaint was filed at the October term, 1873, and a temporary injunction granted. At the February term, 1874, the defendent appeared and filed a demurrer to the complaint for the want of equity. The court overruled the demurrer, and the

defendant not answering further, rendered a decree perpetuating the injunction and against the defendant for costs. The defendant appealed.

If made in good faith, the action of the county judge and county clerk in charging the valuations of the appellee's lands after the adjournment of the county board of equalization, was without a semblance of authority.

By section 65 of the revenue act of 1871, the county board of equalization composed of the assessor, county judge and county clerk, were required to meet at the clerk's office, on the third Monday in September, in each year, and continue in session for six days. By section 66, the clerk, on the third Monday in September, 1872, and every second year thereafter, was to lay before them the returns of the real property made by the assessor, and they were required, after taking the oath prescribed by the act, immediately to proceed to equalize the value of the real property of the county, and section 67 made it the duty of the clerk, on or before the first day of October, 1872, and every second year thereafter, to transmit to the auditor an abstract of the aggregate value of the real property of each township as equalized by the board.

The act expressly limited the session of the board to six days, and the legislature never contemplated as possible, a failure to complete the equalization within that time, or that a necessity could arise for a continuance beyond it.

The time and place for the meeting of the board and the duration of its session were definitely fixed, with the obvious intent of affording the tax payers an opportunity to complain of and have corrected any erroneous or unjust assessment of their property, either by the assessor or the board, which end would have been defeated, if they might have met at any other time or place, or continued longer in session. The nature of the duty to be performed, and the protection designed to those whose interests

were to be affected by it, show that the designation of the time and place and length of session, was intended as a limitation on the power of the board.

A statute is never to be regarded as directory merely, or any of its provisions dispensed with, "when the act required, or the omission of it can by any possibility work advantage or injury, however slight, to anyone affected by it. In such case, it can never be omitted." *Mayhew* v. *Davis*, 4 McLean, 213 ; *Clark* v. *Crane*, 5 Mich., 151 ; *The People* v. *Schermerhorn*, 19 Barb., 558 : Black. on Tax Titles, 305-311 ; Cooley on Const. Lim., 74-78 ; Sedgw. on Stat. and Const. Law, 372.

But it was alleged, the alteration and raising of the valuations of the tracts was fraudulently done ; and the truth of this charge the demurrer admits. Such alteration would therefore have been void, if made during the session of the board. Black. on Tax Titles, 466 ; *Cleghorn* v. *Postlewait*, 43 Ill., 428.

As, upon a sale of the lands by the collector, the illegality of the assessment would not necessarily appear upon the face of the deed, and the same would be a cloud upon the plaintiff's title, and the sale would tend to deprive them of their property. The complaint, upon well established principles, and the authority of numerous decisions of this court, presented a clear case for the intervention of a court of equity; and the decree of the court below is accordingly affirmed.