## UNITED STATES *v.* ALLEN and others.

*(Circuit Court, M. D. Tennessee.   October, 1882.)*

INTERNAL REVENUE—SALE UNDER DISTRESS WARRANT VOID.

The provisions of sections 3184 and 3185 of the Revised Statutes must be *strictly construed* and *literally followed,* and when land has been sold and bid in by the United States for taxes due from a firm of distillers in 1867, but not assessed until the interest and penalty exceeded the tax, and not enforced until 1876, and no formal notice and demand of payment could be proved, the United States acquires no title, and a conveyance made before such sale to an innocent purchaser will not be set aside.

In Equity.

*A. McClain,* U. S. Atty., and *J. R. Dillon,* Asst. Dist. Atty., for plaintiff.

*J. W. Newman,* for defendants.

KEY, D. J. The bill in this case is filed to remove a cloud upon the title of the United States to the real estate described in the bill. Alexander & Co. were distillers in Lincoln county, Tennessee, in 1866-7. They were assessed on the July list for 1867 the sum of $3,057.16; the tax so assessed, and interest and penalty thereon, amounted to said sum. On the twenty-first day of January, 1876, the collector issued his distress warrant for the collection of this money, in which he recites that more than 10 days had elapsed since the payment of said taxes was demanded. This warrant went into the hands of W. B. Nicks, a deputy collector, and on the twenty-second day of January, 1876, he levied the warrant upon the real estate claimed in the bill as the property of E. L. Allen, a member of the firm of Alexander & Co. It is stated in said levy that demand of payment of said tax had been made on the second of January, 1869, and also on the seventeenth of December, 1875. The lands were sold and bid in for the United States, and a collector's deed executed therefor in September, 1877. On the fourteenth day of January, 1876, Allen had conveyed this property to C. S. Wilson, and the bill is filed to declare this deed void (1) because the taxes were due and had been demanded before the execution of the deed to Wilson; and (2) because it was made to hinder and defraud the government in the collection of its debt.

The first question to determine is whether the United States has title to these lands. The earlier proceedings, upon which this title rests, were during a period when the internal-revenue laws were little understood in this region of the country by the parties against whom taxes were assessed, or the officers charged with the assessment and collection of these taxes. The record in this case furnishes abundant evidence of that fact. The title of the government rests upon a lien of an extraordinary nature. The lien provided by the law is a lien upon personal property as well as land. It is a lien on property in possession, and upon all rights to property depending on contracts and unexecuted contracts. It not only creates a present lien, but it relates back. The demand may be made long after the maturity of the tax, and will create a lien which relates back and establishes itself upon the property. 4 Dill. 71. There is no limit as to the time, so that innocent parties and purchasers may be involved and ruined. The assessment is *ex parte.* The party against whom the

tax is assessed has no opportunity to resist or combat it. The demand for payment is his notice, and this is after an assessment which has the force of a judgment awarding *fi. fa.* The levy of the warrant, the sale, and the collector's deed all follow without affording the tax-payer any forum for opposition, and it is only when a judicial tribunal is invoked to place the purchaser in possession that he whose property has thus been sold is in a condition to be heard. The law upon which such titles are predicated will be strictly construed. Failures to comply with its provisions will not be cured by presumptions and intendments. The steps required must be literally taken, and must be made evident by clear and conclusive testimony. In order to support and enforce a statutory lien for taxes, all the prerequisites of the law granting the lien must be strictly complied with. *Thacher* v. *Powell,* 6 Wheat. 119; *Parker* v. *Rule's Lessee,* 9 Cranch, 64; *Early* v. *Doe,* 16 How. 610.

Section 3184, Rev. St., says:

" Where it is not otherwise provided, the collector shall in person or by deputy, within 10 days after receiving any list of taxes from the commissioner of internal revenue, give notice to each person liable to pay any taxes stated therein, to be left at his dwelling or usual place of business, or to be sent by mail, stating the amount of such taxes, and demanding payment thereof. If such person does not pay the taxes within 10 days after the service or sending by mail of such notice, it shall be the duty of said collector, or his deputy, to collect said taxes, with a penalty of 5 per cent. additional upon the amount of taxes, and interest at the rate of 1 per centum per month."

Section 3185, Rev. St., provides that all returns to be made monthly, by any person liable to tax, shall be made on or before the tenth of the month, and the tax assessed shall be returned by the commissioner of internal revenue by the last of the month; and that all returns for which no provision is otherwise made shall be made on or before the tenth of the month succeeding the time when the tax is due and liable to be assessed, and shall be due and payable on the last of the month in which the assessment is made, and if not paid, the penalty and interest follow non-payment;—

" Provided, that notice of the time such tax becomes due and payable is given in such manner as may be prescribed by the commissioner of internal revenue. It shall then be the duty of the collector, in case of the non-payment of said tax on or before the last day of the month as aforesaid, to demand payment thereof, with 5 per centum added thereto, and interest at the rate of 1 per centum per month as aforesaid in the manner prescribed by law; and if said tax, penalty, and interest are not paid within 10 days after such demand, it shall be then lawful for the collector or his deputy to make distraint therefor as provided by law."

The proceedings in this case were under these sections; it so appears from their face. The law requires diligence of the officers charged with its execution, but in the case before us the taxes became due and payable in July, 1867, and amounted to $1,484.70. They were not assessed, and the penalty and interest fixed, until said penalty and interest amounted to $1,573.10,—a sum larger than the tax. The distress warrant did not issue until the twenty-first of January, 1876, seven years after the taxes accrued. Allen had purchased and sold property in the mean time, and the rights of innocent persons had intervened. There was great and inexcusable laches on the part of the officers of the government, and while this may not affect the title of the United States to the property, it does not add weight to its equitable remedy, but on the contrary furnishes an additional reason why strictness should be required in the steps necessary to support the title.

Unquestionably, a demand on the part of the collector or his deputy of the payment of the tax, penalty, and interest, was a necessary prerequisite. This is so regarded by the United States, for the commissioner of internal revenue has by regulation provided not only a form of demand, but of the notice which must precede it. There must be, under the proviso in section 3185, not only a demand, but it must be preceded by a notice of the time when such assessment becomes due and a demand for payment. Is the required demand established clearly, satisfactorily, in this record? The distress warrant recites that "more than 10 days had elapsed since said taxes were demanded." The return of the deputy collector says that demand was made on the second of January, 1869, and also on the second of December, 1875. These recitals are sufficient to establish *prima facie* a demand, but is not this *prima facie* case overturned by the proof? There is no record or writing anywhere sustaining these recitals. The warrant was issued January 21, 1876, and levied the following day. Seven years had passed between the first demand and the levy containing the recital of the demands. Ramsey, who was collector in 1869, had gone out of office, had been succeeded by Mullens, and Mullens in turn had been succeeded by Bryant. The deputy collector in 1869 was named Farrar. In 1876 that place was filled by Nicks. Ramsey does not prove any demand in January, 1869. He says that he made various demands, verbally and in writing, by himself and by his deputy, Farrar, and that these demands were made from the latter part of 1867 through the year 1868. He proves no demand in 1869. Farrar, Bryant, and Nicks are not ex-

amined to prove a demand.   I take it that as complainant's title on its face, rests on the demands of January, 1869, and December 1875, these demands must be established, or at least one of them.   A failure to do this would not be cured by proving other demands, but if it were the other demands are not sufficiently proven.   The demand required is not an informal one—a mere dun.   It must be formal and specific.   The law requires that within 10 days after receiving his list of taxes from the commissioner of internal revenue the collector or his deputy shall give notice to each person liable to pay taxes, to be left at his dwelling or place of business, or sent by mail, stating the amount of taxes and demanding payment thereof.   Section 3184, Rev. St.   The notice must be in writing or print, or it could not be so left or sent by mail, and it must be given in one or the other methods. Not only so, but it must state the amount of taxes and demand payment thereof.   How could Nicks know or ascertain that these things had been done seven years before, when there is no record, book, or paper anywhere showing the fact, nor proof of any one establishing it?   Nor does his recital of the demand of December, 1875, have any better support.

Titles should not be divested out of owners and purchasers in proceedings like those, where so much laches, carelessness, and uncertainty appears.   It is not necessary to discuss the question as to whether a defective prior demand would be cured by a subsequent one made in due form, as in my opinion neither demand is satisfactorily established in fact.   To escape this conclusion the district attorney earnestly, ably, and with great force argues that the assessment in this case was under section 3253, Rev. St., in which no such formality of demand is required as in sections 3184, 3185; that these sections in terms only apply to cases where no other method is provided; and it is insisted that another method is given in section 3253 in a case like this.   It is true that the liquors were illegally removed, but in this the collector and his deputy joined Alexander & Co.   All the parties concerned were ignorant of the law applicable in such instances, and the letter of the commissioner of internal revenue, dated February 18, 1876, treats the removal as having been made in an "informal manner," and not as working a forfeiture of the spirits.   They were simply taxed as though the removal had been legal.   In case of a legal removal the taxes should have been paid before removal, and it was only the tax thus due which was assessed.   But if I am in error in this, section 3253 expressly provides that its terms "shall not exclude any other remedy or pro-

ceeding provided by law," and the remedy and proceedings in this record are clearly under sections 3184, 3185.

The conclusion I arrive at is that complainant has not acquired title to the lands sued for, or any interest in them, and as the bill seeks no equity save such as would grow out of an ownership legal or equitable of the lands and lots, or some interest therein, it must be dismissed. But as the assessment of taxes seems to have been valid, and as Alexander & Co. were at fault, as well as the revenue officers, in the matters which led to this litigation, I shall direct that all the costs in this litigation incurred or placed thereon by the defendants, be paid out of the estate of E. L. Allen, for which execution may issue.