HOKE, J., concurring in result; CLARK, C.J., dissenting. *Page 82 
The action was determined by his Honor upon the following statement of agreed facts:
1. That prior to 1 June, 1907, the plaintiff was the owner of a certain tract of land lying a Beaufort County, North Carolina, on 11 December, 1906, the said plaintiff sold said tract of land to one N.C. Hughes, Jr., in consideration of the sum of $25,000, and executed a deed to the said Hughes therefore. On 14 December, 1906, the said N.C. Hughes, Jr., executed notes or bonds unto the plaintiff, under seal, aggregating the sum of $25,000, representing the purchase money for said land, and said notes were secured by mortgage upon said land, which said mortgage was duly registered in the register of deeds' office in Beaufort County.
2. In the month of June, 1907, the plaintiff listed his taxes with a list-taker, who had therefore been duly appointed to receive the tax list for Chocowinity Township, in which township plaintiff resided. (85) That on said list plaintiff returned the aforesaid notes or bonds of the said N.C. Hughes, Jr., which was secured by mortgage upon the aforesaid tract of land, as being worth $25,000.
3. The said list-taker duly returned his list to the county commissioner of Beaufort county or the register of deeds, and the same were placed with the register of deeds of said county of Beaufort, in order that the tax list for the county of Beaufort for the year 1907 might be made up from said tax list. After the said tax list had been returned to the register of deeds of the county of Beaufort, and before the register of deeds had made up the tax books for the year 1907, the plaintiff, who was then a member of the Board of County Commissioners of Beaufort County, instructed the Register of Deeds of Beaufort County, who was the clerk of said board and who made up the tax books for said county, not to value said notes at $25,000, but to leave the matter open for the commissioners as to their value. The county commissioners at a regular meeting ordered that said notes be listed by the plaintiff for the year 1907 at $12,500 and the register of deeds of said county, being clerk of said board, entered said notes upon the tax books of the said county of Beaufort for the year 1907 at the valuation of $12,500, being the valuation fixed by the board of county commissioners. On 1 June, 1907, plaintiff was not indebted to any one.
4. The plaintiff paid the taxes assessed against said notes for the year, 1907, based on the valuation of $12,500, being the sum at which they were entered upon the tax books of the county of Beaufort by the register of deeds, clerk of the board of county commissioners, under the *Page 83 
instruction of the board of county commissioners, instead of at the sum of $25,000, for which the same had been listed with the list-taker.
5. On 1 June, 1908, plaintiff was the owner of the said notes, given by the said N.C. Hughes, Jr., as aforesaid and secured by mortgage, as aforesaid, but had borrowed the sum of $3,000 and had given the said notes as collateral security for said loan of $3,000. He owed no other debts on 1 June, 1908.
6. The plaintiff, during June, 1908, listed the said notes for taxation with the list taker for Chocowinity Township, who had been duly appointed to take the tax list for said township. In listing said notes for taxation the plaintiff returned the same as being worth the sum of $11,000 and deducted from the said $11,000 the amount of his indebtedness on the said notes, towit, the amount of $3,000, leaving a net balance of $8,000 as the amount on which the plaintiff was to pay taxes for the year 1908 by reason of the ownership of the said notes of the face value of $25,000, subject to a lien of $3,000 for money (86) borrowed.
7. On the second Monday in July, 1908, the members of the board of country commissioners for the county of Beaufort me, according to law, as the board of equalization for the county of Beaufort, for the purpose of equalizing the tax valuation throughout the county of Beaufort.
8. At the session of the said board of equalization the following resolution was passed:
"It has seen reported to the county commissioners that Mr. Fred Wolfenden has in his possession, to wit, solvent credits that he has failed to list for taxation for the year 1908. The said board, upon receiving such information, requests Mr. Wolfenden to list such property, if it has not been listed as the law requires."
The plaintiff was a member of the board of commissioners of Beaufort County, and a member of the board of equalization when said resolution was passed. No other action was taken in regard to said matter at said meeting.
9. On the first Monday in March, 1909, plaintiff after due advertisement, according to the terms of the said mortgage, sold the lands described in said mortgage, securing the notes, at public auction at the courthouse door in the county of Beaufort, at which sale S.R. Fowle became the last and highest bidder for said land in the sum of $22,500. The plaintiff, as mortgagee, duly executed to the said S.R. Fowle became the last and highest bidder for said land in the sum of $22,500. The plaintiff, as mortgagee, duly executed to the said S.R. Fowle a deed for said land. S. R. Fowle is solvent and was solvent at said time.
10. At the time of the sale of said land, under the said mortgage or deed of trust, as aforesaid, the plaintiff had not then paid the taxes which were assessed against him for the year 1908. *Page 84 
11. On the first Monday in March, 1909, the Board of County Commissioners of Beaufort County, without notice to the plaintiff, raised the valuation of said notes as listed by said Fred. Wolfenden, of which he was the owner of 1 June, 1908, to the sum of $22,500, being the sum of $11,500 in excess of valuation which plaintiff had put upon said notes in 1908, in returning the same to the list-taker, and $14,500 in excess of valuation placed on tax books.
12. The plaintiff, by his attorney appeared before the board of County Commissioners of Beaufort County, at the March meeting in 1909, on the day after the valuation was raised, and protested against the action of the board of county commissioners, and upon the request of plaintiff, through his attorney, the Board of County Commissioners of Beaufort County continued the action of the matter of raising the taxes on the said tax list until the meeting of the said board of (87) county commissioners could be held in April, 1909.
13. At the meeting of the Board of County Commissioners of Beaufort County, and upon the request of plaintiff, the plaintiff and his attorney appeared before the said board, and after inquiry, the said board of commissioners, over the plaintiff's protest, adopted the following resolution:
"It appearing to the satisfaction of the board that Fred. Wolfenden's solvent credits were listed for the year 1908 at $8,000, and it appearing upon further investigation that the actual value was $22,500, it is now. therefore, ordered, adjudged and decreed that he be charged for the difference, which is $14,500; amount of tax $116."
14. On 4 June, 1909, the plaintiff paid to George E. Ricks, Sheriff of Beaufort County and tax collector, the sum of $116, being tax on $14,500, under protest, in writing, that the assessment of said tax was contrary to law. After the first Monday in March, 1909, and before 4 June, 1909, plaintiff had paid to George E. Ricks, sheriff and tax collector of Beaufort County, the taxes which had been assessed against him on the said notes, which had been listed by him for the sum of $8,000, net, that is $11,000, from which was deducted the $3,000 due and owing plaintiff — that is, the plaintiff paid the taxes assessed on said $8,000 as the value of said notes.
15. On 10 June, 1909, the plaintiff demanded of J.F. Taylor, Treasurer of Beaufort County, a return of said sum of $116; the said amount has not been returned, and defendant still refuses to return the same, except the sum of $24, being the taxes on $3,000, the amount of the indebtedness of plaintiff on 1 June, 1908, and for which the said notes had been duly pledged as aforesaid, as collateral security. The sum of $24 defendant has offered to return and has tendered tot he plaintiff, defendant admitting that said sum of $24 should not have been collected *Page 85 
by the sheriff, by reason of the fact that plaintiff was entitled to have deducted from the actual value of said notes the amount of his indebtedness, to wit, $3,000. Plaintiff has refused to accept same.
On 4 May, 1909, plaintiff issued a summons against George E. Ricks, Sheriff of Beaufort County, and entered a suit against said Ricks, and said suit proceeded to judgment. A copy of the record in said cause is hereto attached and made a part of this case agreed and is marked "A".
16. It is agreed that if the court is of opinion that the commissioners of Beaufort County, at their meetings in March and April, had no power an authority to increase the value of said notes as listed, and are bound by the return made by plaintiff of his taxes to the list-taker in June, 1908, and if the court is of the opinion that defendant cannot lawfully collect the tax, upon the difference in value of (88) said notes between the amount for which said notes were listed and the amount for which said land was sold in March, 1909, and if the court should be of the opinion that the plaintiff is not liable for the taxes upon the additional sum of $11,500 for the year 1908, then it is agreed that the judgment shall be entered against the defendant for the said sum of $116 and costs. On the other hand, it is agreed that if plaintiff cannot maintain this action and is not entitled to recover of the defendant the amount collected by the sheriff, as aforesaid, and that plaintiff is liable for the taxes on the said additional sum of $11,500 for the year 1908, then judgment shall be entered in favor of the defendant.
Upon the agreed fact, his Honor rendered the following judgment: "This cause coming on to be heard by consent before his Honor, George W. Ward
judge presiding, at the above-named term of court, on an appeal by the defendant from A. Mayo, justice of the peace, upon an agreed statement of facts, submitted as an agreed statement of fact, and the court, after considering the facts, being of the opinion that the plaintiff is not entitled to recover, except $24: It is now, upon the motion of W. C. Rodman, attorney for the defendant, ordered, adjudged and decreed, that the said action be dismissed and that the plaintiff take nothing by said suit except the $24 heretofore tendered by the defendant, which by consent it is ordered be recovered by said defendant. It is further ordered that the plaintiff pay the costs to be taxed by the clerk."
From this judgment the plaintiff appealed to this Court.
Chapter 440, Laws 1909, designated as the Machinery Act, contains, as similar acts for many years past have done, a well-considered plan and procedure for determining *Page 86 
the value of all property, the subject of taxation, in the earnest endeavor to make effective the mandate of sec. 3, Art. V, of the Constitution. The controlling purpose of the law is to reach all taxable property and to have it placed upon the list, as near as may be, at its actual value, that it may not require of the taxpayer any more than his just proportion of the public burden, but that he shall certainly be required to "render unto Caesar the things that are Caesar's."
The particular section of the above act under which the board of commissioners acted in the present case is section 68. The (89) corresponding section of the act of 1881, sec. 18, ch. 117, being in language almost identical with this, we construed by this Court in Commissioners v. R.R., 86 N.C. 542, in which Smith C.J., delivering the opinion of this Court, said: "The notice required before the meeting in August (now, by section 68, to be held in July) is general, and has reference to a general revision of the lists of the whole county, with a view to an equal and uniform assessment among the several townships, and it is to give opportunity to all who may be dissatisfied with the valuation of their property to make complaint and have it corrected. This sitting must be protracted until the work is completed. But authority is expressly conferred `to raise the valuation upon such property as they deem unreasonably low'; and of this proposed increase special notice must be given to the owner or agent. As the commissioners do not meet after their lists are delivered to their clerk (section 16) before the second Monday in August, and then can only make the examination and ascertain that any property has been valued unreasonably low, it is obvious that, in order to the giving notice, they must do so at a future day, when the owner can be present and can be heard before the matter can be determined. Nor can any reason be suggested why it should be earlier than the regular meeting in September. The commissioners have complied with the requirements of the act." In that case the commissioners, at their meeting in August — the time then fixed by the statute — determined to increase the valuation of defendant's roadbed from $3,000 to $6,000 per mile, and ordered that notice issue to the company to appear at their next meeting on the first Monday in September, and show cause why the valuation should not be fixed at the proposed increased amount.
It will be observed that the commissioners in that case began the procedure to increase the valuation at the meeting prescribed by law for that purpose, and followed up the matter so begun, without break or discontinuance, in the prescribed procedure to the final act. The only action taken by the commissioners, in the present case, at the meeting on the second Monday in July, was the adoption of the following resolution: "It has been reported to the county commissioners that Mr. *Page 87 
Fred. Wolfenden has in his possession, to wit, solvent credits that he has failed to list for taxation for the year 1908. The said board, upon receiving such information, requests Mr. Wolfenden to list such property, if it has not been listed, as the law requires." If the commissioners were correctly informed that the plaintiff had omitted to list any chose in action, their power was ample under section 72 of the act to secure the placing of such omitted property upon the tax (90) list.
In both cases — that of undervaluation, under section 68, and of omitted property, under section 72 — the commissioners are vested with ample powers of inquiry by examining witnesses, calling for papers and calling upon the taxpayer himself, and the machinery for obtaining information to increase the value of such property as they shall deem to be listed unreasonably low is ample. But the subsequent action of the commissioners in this case conclusively shows that it was not omitted property, but undervalued property, they were in search of. Property willfully omitted from the tax books or willfully concealed in order to evade its fair and just contribution to the public expense has small claim to the sympathy of the legislature or judicial departments of the Government; but where the question at difference is one of valuation — a matter generally difficult of exact ascertainment and in ascertaining which there is generally place for honest difference of opinion — we are of the opinion that the law in providing the procedure to determine this has fixed, both by its letter and spirit, a defined time at which this shall be finally determined for each fiscal year. This would seem to be clear from this language of section 68, to wit: "and it shall be the duty of the register of deeds, without additional compensation, to complete the list by computing the tax payable to (by) each person, affixing the same opposite his name"; and "The board of commissioners hall sit for one day at least, and, when necessary, shall sit until the revision is complete, etc." It is evident that the time of this meeting was changed from August (under the older statutes) to July, to enable the commissioners to complete the work of revision and give time to the register of deeds to make up the tax books and compute the taxes by the first Monday of September, when the tax books are directed to be taxes.
Section 68 does not create the board of commissioners technically a board of equalization; this board is created by section 18 of the act and meets only once in four years — the board of assessors; but the duty and power of revision is specifically imposed upon the board of commissioners by section 68, and the time definitely fixed when it is to begin the performance of this duty. If the board of commissioners is invested *Page 88 
with the general power of revision, and can exercise it at any meeting in the year, why has the law fixed a definite time for it to meet to perform this particular duty? While it is important that the State and (91) its several subdivisions invested with the taxing power should receive from every species of taxable property its fair and just proportion to the public expense, it is equally important that the taxpayer should know and have definitely settled, at some prescribed time in each year, how much his contribution in taxes to this public expense shall be. Especially is this important in view of the provision of the law that the tax constitutes a lien upon real estate from 1 June, and the tax lists, when delivered to the sheriff or tax collector, constitute a judgment and execution against personal property and require but the levy by the officer to completely subject it to the payment of the tax obligation. As was said by this Court in Wilson v. Green, 135 N.C. 343, at p. 348: A thorough and complete system of procedure is established, by virtue of which the taxpayer can be heard upon all questions concerning the valuation of his property for taxation, and be restored to any and all rights he may have lost by any irregular or fraudulent action of the assessors." While in that case the Court was discussing the procedure prescribed by statute for use in that year, when there was to be a revaluation of all property, yet the statement of the Court above quoted is equally applicable to the other years.
To hold that the Board of Commissioners is invested with the power of revision, to be exercised at any meeting, would lead to great confusion and uncertainty and would subject the taxpayers, who owned the land or personal property, to the risk of having the value of his property increased for taxation at any time during the year, when by a sale of it it had brought a higher price than the value at which it was listed. The same result would follow to that taxpayer whose credits depended for their value entirely upon the property pledged for their payment. It was not, in our opinion, contemplated by the statute under consideration that this doubt, confusion and uncertainty should exist. We have examined similar statutes of other States and the decisions of their courts constructing them, and the construction we have placed upon our statute is in harmony with the construction given by other courts to their statutes. Peterson v. Bank,8 Kan. App. 508; Sumner v. Colfax Co., 14 Neb. 524; Wiley v. Flournoy,30 Ark. 609; Yocum v. Bank, 144 Ind. 272; Phillips v.New Buffalo, 64 Mich. 683; Auditor v. Chandler,108 Mich. 569; Land Co. v. Carter Co., 142 Cal. 116;Fowler v. Russell, 45 Kan. 425; Lead Co. v. Simms,108 Mo., 222.
Concisely stated, then, in our opinion, the power of revision conferred upon the board of commissioners by section 68 is a special power, not one of its general and ordinary powers enumerated in section *Page 89 
1318, Revisal of 1905; that the board must meet on the second (92) Monday of July to begin the exercise of the particular power of revision; that it must continue its session until the work of revision is complete; that when it determines to increase the value of property already listed, it must give notice to the owner or his agent, fixing a time for its hearing; that it may continue its session, by adjournment, as a board of revision until such time, and may further continue its session when necessary; that ample machinery and power is conferred upon it to obtain information to reach a just conclusion; that when it completes the work of revision thus begun, its duties and power as a revising board cease and determine, and it cannot resume such duties until the time appointed by statute in the next year;that in the fourth year, the year of revaluation of property, the powers and duties of equalization and revision are conferred by section 18 upon the board of equalization, and not upon the board of commissioners, as a distinct corporate body.
Applied to the present case, the plaintiff listed solvent credits, which consisted entirely of the purchase money notes of the land; that exact information was given to the board the preceding year and it valued them at $12,500, the tax value of the land; that plaintiff valued the same notes that next year at $11,000; that this valuation was not changed by the board of commissioners sitting as a board of revision; that the land was sold on the first Monday of March, 1909, and brought $22,500, and the proceeds were applied to plaintiff's solvent credits. We think this action of the board unwarranted by law. We do not wish to be understood as passing upon the power of the board of commissioners in cases of fraudulent undervaluation of property. That question is not presented by or involved in the decision of this case.
Upon the statement of agreed facts, his Honor should, as we think, have rendered judgment for the plaintiff for the sum of $116 — the tax collected on the increased amount of valuation — and in declining so to do there was.
Error.