Phillips,
dissenting: Upon the hearing of this proceeding a conflict developed in the testimony of the witnesses as to what happened at the Chase National Bank on August 21. Having heard the witnesses, considered the weight to be given their testimony, the probabilities of the situation, and the extent to which their testimony checks into the time which was taken up by the transactions, I find myself unable to accept the version which has been incorporated into the findings of fact. In such circumstances I must, most reluctantly, record my dissent from the findings so far as they relate to what transpired at the Chase National Bank on that date. Without going into a detailed discussion of the evidence, it is sufficient to say that I am satisfied that the Government agents interrupted the transaction before payment for the stock had been accepted by the taxpayers, and that from that moment these agents prevented the taxpayers from coming into possession of the money, not by reason of any legal lien, but by reason of an illegal seizure under color of the authority of their office.
*1102 The prevailing opinion speaks of the Government agents as filing a lien against the money and taking steps to perfect this lien. If the agents did in fact merely subject this money to a statutory lien, I would have no doubt that the result reached is correct, whatever the facts may be with reference to the time when the lien was asserted and the money accepted. I am unable, however, to find any basis in fact or in law to sustain the theory that the transaction constituted the assertion of a statutory lien for taxes.
The Government agents claimed to act under section 3186 of the Revised Statutes by reason of a purported assessment of income taxes upon 1920 income made on August 27, 1920. This assessment was based upon a computation of profit on a transaction which had not yet taken place when the assessment was made. Under ordinary circumstances, taxes on 1920 income were not due and no assessment could be made until 1921. The only exception to this of which I know, or to which my attention has been called, was contained in section 250 (g) of the Revenue Act of 1918.[1] As no' attempt was made by the Commissioner to comply with the provisions of that section, the purported assessment was an illegal and invalid act.
Even though the assessment could be considered a legal and valid act, the acts of the Government agents were nevertheless illegal. Section 3186 of the Revised Statutes,[2] under which they purported to act, provides for the imposition of a lien upon the property of a per *1103 son who after demand neglects or refuses to pay any tax for which he is liable. The section does not authorize or provide for the seizure or distraint of property and no seizure or distraint is necessary to create the lien which is provided for in the section. Sections 3187, 3188, 3190, 3193, et seq., of the Revised Statutes provide a complete system for distraint,, levy and sale of property for unpaid taxes. No attempt was made to proceed under those sections, and in fact no legal proceeding could have been taken under those sections until ten days after notice and demand for payment. Even under the stringent provisions for distraint, the collector could not have seized and retained more cash than was necessary to pay the taxes assessed, and fees, if any.
It is well settled that, in order to support and enforce a statutory lien for taxes, all the prerequisites of the laws granting the lien must be strictly complied with. Thatcher v. Powell, 6 Wheat. 119; Parker v. Rule's Lessee, 9 Cr. 64; Ronkendorff v. Taylor, 4 Pet. 349: Stead’s Executors v. Course, 4 Cr. 403; Early v. Doe, 16 How. 610; Williams v. Peyton's Lessee, 4 Wheat. 77; Mayhew v. Davis, 4 McLean, 213; United States v. Allen, 14 Fed. 263.
The lien requires an assessment, a notice that the tax is due, and a specific demand upon the individual taxpayer. United States v. Pacific Railroad, 1 Fed. 97.
I must conclude that possession of the money was not taken under any authorized levy upon it under proceedings to distrain, that there was no provision of the law which authorized the agents to impound it, and that possession was taken by them without any authority or warrant of law but by virtue of superior force coupled with the provisions of the Federal laws making it a crime to resist Federal officers.[1]
This is further borne out by the undisputed testimony that the. agents expressly stated that they would not take an amount of legal tender sufficient to pay the purported assessment and permit the taxpayers to retain the balance. The truth of the matter, as disclosed by the evidence in this appeal, is that the officers of the Government had determined that the proceeds of the sale should be tied *1104 up until the taxpayers had settled not only the tax liability which purported to have been assessed against them, but also additional taxes which these officers believed were due from a corporation in which the taxpayers were interested as the principal stockholders; and in accomplishing that purpose these officials did not intend to be hampered by any restriction placed in the law for the protection of the property of taxpayers.
As I view the evidence, it establishes that the taxpayers were in the act of consummating a sale of their stock when the Government officials interfered and stated in no uncertain terms that their instructions were to seize and impound the proceeds, which they subsequently did, illegally. The taxpayers had two possible courses of action. They might refuse to proceed with the sale, in which case the default under the retender agreement would be theirs and the Harriman interests would be in a position to make the stock of the corporation worthless. They might proceed with the sale, permit the Government agents to take the money and later fight the matter out with the Government. The Government agents had insisted that the taxpayers might not take a single dollar of the proceeds, but did consent that it should be placed in a safe deposit vault in the names of the taxpayers but subject to Government control. The taxpayers chose what appeared to them to be the lesser of the two evils, consummated the sale, and permitted the proceeds to be taken into the control of the Government agents in accordance with the steps which those agents had outlined prior to the consummation of the sale. In such circumstances, remembering that the action of the agents was not the imposition of a lien but was an illegal impounding of the money, can it be said that, although the sale was consummated in 1920, the proceeds were realized in that year within the provisions of section 213 of the Revenue Act of 1918, which stated:
The amount of all such items shall he included in the gross income for the taxable year in which reeewed by the taxpayer * * *.
There is no contention that a sale did not take place; the contention is that the receipt of the proceeds was deferred by reason of the circumstances and that any gain is to be accounted for in the year in which the proceeds becofiie available to the taxpayers. The situation presented is unique. Upon the facts as I conceive them to be, it is my considered opinion that the proceeds of the sale were not received by the taxpayers within the taxable year, the taxpayers being upon a cash receipts and disbursements basis.
*1105 Counsel for the Commissioner contend that the Government can not he estopped from collecting taxes by reason of the acts of its officers. Possibly so, but neither can a taxpayer be required to report as income something which he did not receive on the ground that it was a Federal officer who prevented him from realizing the income. The question is not one of estoppel; it is rather whether the taxpayers, who keep their accounts and make their returns on a cash receipts and disbursements basis, received cash or its equivalent in 1920 from the sale. As I have pointed out above, this is not a case where the property was used to pay a liability or taken under proceedings to distrain, or under any other proper proceeding, in either of which cases it would seem that there could be no question that a taking or receipt by a legally authorized officer would be a receipt by the person against whom the proceeding was taken.
It is further urged that the money was received by the taxpayers when, after the Government agents had made knoAvn their intention, the taxpayers nevertheless proceeded with the sale and permitted the proceeds to be impounded. Everyone concerned had by that time recognized that the taxpayers were not to be allowed to take the money. They were surrounded by officials who had already advised them in very positive terms of their intention to seize and impound this money and who had refused to permit the taxpayers to have any part of it. By virtue of their office, if not by virtue of Superior physical force, the officers dominated the situation. The taxpayers’ efforts to secure the money had been made and had been unsuccessful; under protest they had made the only arrangement which seemed possible, which was to place it in a safe deposit box in their name but under control of the Government agents until some other arrangement could be made, and anything which was done after that was merely to carry out the arrangement already made.
All that the taxpayers received at the time of the sale was the right to recover the proceeds. Possession, control, and the power to use and enjoy the money was never theirs. Even the right to recover it was not against the United States, for the money was not received by it in payment of taxes, but was at most a personal action against those who had taken possession unlawfully. I can not believe that this is sufficient to constitute the receipt of cash within the purview of the statute and must express my dissent from the conclusion reached.
Murdock and Teussell concur in this dissent.

 This section, so far as material, reads:
Sec. 250. (g) If the Commissioner finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly Ineffectual proceedings to collect the tax for the taxable year then last past or the taxable year then current unless such proceedings be brought without delay, the Commissioner shall declare the taxable period for such taxpayer terminated at the end of the calendar month then last past and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of said tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any action or suit brought to enforce payment of taxes made due and payable by virtue of the provisions of this subdivision the finding of the Commissioner, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of the taxpayer’s design.

 This section read, in 1920, as follows:
If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, except when otherwise provided, until paid, with the interest, penalties, and costs that may accrue in addition thereto upon all property and rights to property belonging to such person: Provided, however, That such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the collector in the office of the clerk of the district court of the district within which the property subject to such lien is situated: Provided further, Whenever any State by appropriate legislation authorizes the filing of such notice in the office of the registrar or recorder of deeds of the counties of that State, or in the State of Louisiana in the parishes thereof, then such lien shall not be valid in that State as against any mortgagee, purchaser, or judgment creditor, until such notice shall be filed in the office of the registrar or recorder of deeds of the county or counties, or parish or parishes in the State of Louisiana, within which the property subject to the lien is situated.

 Section 65 of the Criminal Code provides:
Sec. 65. Whoever shall forcibly assault, resist, oppose, prevent, impede, or interfere with any officer of the customs or of the internal revenue, or his deputy, or any person assisting him in the execution of his duties, or any person authorized to make searches and seizures, in the execution of his duty, or shall rescue, attempt to rescue, or cause to be rescued, any property which has been seized by any person so authorized; * * * shall be fined not more than two thousand dollars, or imprisoned not more than one year, or both; and whoever shall use any deadly or dangerous weapon in resisting any person authorized to make searches or seizures, in the execution of his duty, with intent to commit a bodily injury upon him or to deter or prevent him from discharging his duty, shall be imprisoned not more than ten years.