## Case No. 15,984.

### UNITED STATES v. PACIFIC RAIL-ROAD et al.

[4 Dill. 71; [1] 23 Int. Rev. Rec. 384.]

Circuit Court, E. D. Missouri. 1877.

INTERNAL REVENUE LAWS — DEMAND OF TAXES — LIEN.

1. The internal revenue act of July 13. 1866 (14 Stat. 104; Rev. St. § 3186), provides, in reference to certain taxes, that if any person liable to pay the same, "neglects or refuses to pay them after demand, the amount shall be a lien in favor of the United States from the time it was due until paid, with interest, penalties, and costs, upon all property and rights of property belonging to such person:" *Held*, that a demand is necessary to create and bring into operation this lien.

[Cited in U. S. v. Allen, 14 Fed. 264.]

2. It is essential to such a demand that it should state the amount of the tax and demand payment thereof.

3. That each of the three several demands here alleged was insufficient to create the lien.

This was a suit in equity, brought in 1877, under the authority of the statute (Rev. St. § 3213). which provides for the recovery of taxes by suit and to enforce the lien of the taxes against the property owned by the delinquent (the Pacific Railroad) at the time the taxes accrued (Rev. St. § 3186). The taxes sought to be recovered. amounting to about twenty-five thousand dollars, accrued in 1871 against the Pacific Railroad. The property of that company has since been sold on a decree of foreclosure. and is owned by and in possession of the other defendants to the bill. The defendants, the present owners of the property, demurred to the bill, raising, principally, the question of the sufficiency of the demand averred in the bill and amended bill, to create or give a lien for the taxes. Three demands are relied on by the government: 1. The letter of Collector Maguire, of July 25, 1874. 2. A demand on August 29, 1874. 3. A suit brought in October. 1874, against the lessee of the Pacific Railroad, viz., the Atlantic and Pacific Railroad. for the recovery of said taxes, which suit is still pending, and to which the Pacific Railroad is not a party. The particulars of these several demands appear in the opinion of the court, which was orally pronounced by Mr. Justice Miller.

W. H. Bliss, U. S. Dist. Atty.

Melville C. Day, for defendants.

[Before MILLER, Circuit Justice, and DILLON, Circuit Judge.]

MILLER, Circuit Justice. We have before us the case of the United States against the Pacific Railroad et al. It was first submitted on the exceptions to the answer. [Case No. 15,983.] The purpose of the bill is to enforce by a decree in equity a lien against the Pacific Railroad Company, and those into whose hands the property has since come,

for taxes, which, it is alleged, were never paid and never reported by the Pacific Railroad Company for assessment.

The first proposition which we had to decide was that the defence pleaded as a set-off could not be set up; that no set-off or counter-claim could be set up in any suit against a party in favor of the government for the collection of taxes. The question here involved then came up on other exceptions to the answer.

We soon discovered that the main question to be decided in this case was whether such a demand had been made of these taxes as brought it within the operation of section 3186 of the Revised Statutes, originally enacted on the 13th day of July, 1866, which is that "if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time it was due until paid, with the interest, penalties, and costs that may accrue in addition thereto, upon all property and the rights to property belonging to such person."

Now the main question is, whether such a demand had been made as makes effective the lien mentioned against the property of the Pacific Railroad.

In order that the question might be fully considered by this court on the facts just as they could be proved, the parties concluded to abandon the exceptions to the answer, and the attorney for the government took leave to amend his bill and perfect it so as to set out the exact facts which he claimed to constitute such a demand. He has done so by two amended bills, and the whole question turns upon whether these bills set out a sufficient demand to create a lien for the taxes. The first demand which he sets out is found in a letter of the date of July 25, 1874, from Mr. Maguire, the collector of this district, to the Pacific Railroad Company, which I will read:

"Gentlemen:—I beg leave to call your attention to the enclosed copy of the Internal Revenue Record, containing a letter from the honorable commissioner of internal revenue addressed to W. H. Sinclair, Esq., collector of Galveston. The letter referred to gives an abstract of the various acts of congress, to which you are referred, meaning taxes on the gross receipts, dividends, interest on bonds, etc., of railroad companies and others. Upon examination of the books of this office, it appears that during a large part of the time covered by these various acts no returns were made by you in accordance with their requirements, and from credible information in my possession it further appears that a large amount is due by your company for taxes, together with the penalty of fifty per cent for neglecting to make the return. I call your attention particularly to the matter of surplus earnings of interest on bonds.

"I am instructed by the commissioner of internal revenue to call upon you for a state-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

ment of all taxable amounts which have not heretofore been returned, and to say further that if a proper return is made immediately, with a waiver in writing of exemption from assessment contained in section 20 of the act of June 30, 1864 [13 Stat. 229], indorsed across the face of said return, the assessment will be made without the penalty; otherwise, it will become my duty to report the case to the United States attorney of this district, for collection by suit, with penalty added.

"Any further information that I can furnish you for facilitating this matter will be cheerfully given.

"Your early attention is earnestly requested.

"Very respectfully,      C. Maguire,
"Collector First District."

That is the first allegation of the demand. And the amended petition then goes on to allege: "And afterwards, on the 29th day of August, 1874, a demand was made by the said collector in person upon said company for a return of the taxes due; to which demand said company replied that it would make no return, and were prepared to defend."

The third statement of a demand is an allegation that about that time, or shortly afterwards, a suit was instituted by the government of the United States for these taxes, in which the amount due was fairly stated, against the Atlantic and Pacific Railroad Company; and the claim that such a demand is sufficient (not having been made on the Pacific Railroad) was founded on the allegation in the amended bill that the Atlantic and Pacific Railroad Company had become the successor of the Pacific Railroad by virtue of the contract or lease under which it took possession of all its property and agreed to discharge all its debts, including taxes.

I do not think it is necessary to say anything further about that allegation except that it is an allegation of a demand against a corporation different from the one against which these taxes are now sought to be enforced, and different from the corporation which owed the taxes. The Atlantic and Pacific Railroad Company is not a party to this suit. Whether the demand would be good against them or not if they were parties to this suit, it is not necessary for us to say. They never owed the taxes to the government in any other way than by their contract with the Pacific Railroad. It is a very doubtful question whether the government could have made them pay on that contract—that was a contract between them and the Pacific Railroad, and not between them and the government. But, passing that, the case was an action of debt, which is still pending against them. Whether they are liable or not, it seems to me too clear for argument that a demand made upon that company and upon no one else for the pay-

ment of taxes due from the Pacific Railroad Company cannot be held to be a demand within the meaning of the statute. The demand is not made against the proper party, and is not made against any party to the present suit.

The next question is as to the demand contained in the letter of Mr. Maguire. The demand in that letter is not, in my opinion, of as much force as the verbal one, taking it just as it is averred. The objection to it is, that, looking at this letter from beginning to end, it is an effort, a request, to have these parties furnish the means by which the amount of the tax can be assessed or ascertained against them. There is nowhere a demand that they should come up and pay these taxes; it is only a demand for such information as will enable the assessor, as a preliminary matter, to ascertain the amount of these taxes, and then make a demand for them, or at least then take such steps as the law would allow for the collection of these taxes. The corporation is told, as an inducement to make this report, that if they will waive certain things the penalty of fifty per cent will also be waived. Now, this statement is made upon the authority and request of the commissioner of internal revenue, and, in point of philological accuracy, there is certainly no demand here for taxes.

I will consider some parts of that letter in connection with the next point, which I will proceed to comment upon.

"And afterwards, on the 29th day of August, 1874, a demand was made by said collector in person upon said company for a return of the taxes due; to which demand said company replied that it would make no return, and was prepared to defend."

Now, if it were not for the language "prepared to defend," and that they "would make no return," that is exactly the same as the statement in the letter. It is not a demand for the payment of taxes—there is no demand that you come and pay. It is a demand for a return—that you make a return of the taxes due, by which I suppose they mean a return of the dividends, and the interest and the surplus on which the taxes could be ascertained.

It has, therefore, the same defect, and would be of no more significance than the letter, except that it is argued with some degree of force by the district attorney that, since those returns, or that return, which was demanded, was an essential and necessary foundation on which the government could ascertain the amount of the taxes and make a demand for them, and since they have refused peremptorily to do that, accompanied with the statement that they were prepared to defend—that they would not make any return, but would defend any suit against them—it is said that any further demand is not required; that it was practically a demand and a refusal; and there is some force in the argument. I confess

there appears to be more doubt upon it than any of the other matters in the case; and to determine whether that was such a demand as would create a lien upon "all the property and the rights to property" (for that is the language of the statute), we must look at the statute critically.

It is first to be observed that the statute bristles all over with the weapons which are supposed to be efficient to enable the government not only to ascertain what amount of taxes are due from any person or corporation, but to collect those taxes. All the processes which ingenuity can devise have been put into these statutes. Inquisitorial powers, production of books under oath, attachment and imprisonment, seizures and confiscations, are all at the command of the government from the beginning to the end; and all these have in appropriate cases been put into operation unhesitatingly. And this very section, as it stood at the time in regard to which this demand was made, is one of those which is most full of authority conferred upon the collecting officer in regard to that matter. One provision is that "the collector shall, within ten days after receiving any list of taxes, give notice to each person liable to pay any taxes stated therein, etc., stating the amount of such taxes and demanding payment thereof."

Now, if it is necessary to make a man liable to the processes of distraint and seizure, which will be carried out very soon after the notice reaches him—that the notice should state the amount as well as the time when the tax was due—why should it not be necessary that a notice which by an ex parte proceeding creates a lien on all the property and rights to property of the defendant, should state the amount, and demand its payment? But no amount is stated. No amount is hinted at. There is nothing in this letter or in any of the demands which would not be satisfied by ten dollars or by ten millions.

There is further to be considered the extraordinary nature of the lien. It is not only a lien upon the land, but it is a lien upon the personal property. It is not only a lien upon property in possession, but upon all rights to property depending upon contracts, and upon unexecuted contracts. It not only creates a present lien, but it relates back:

"Any person, banking association, or corporation liable to pay any taxes, neglecting or refusing to pay the same after demand, the amount will be a lien in favor of the United States from the time it is due until it shall have been paid."

This demand may be made three years or five years after the tax shall become due, and will create a lien which retroacts after five years, and establishes itself upon the real estate and personal property, books, written contracts, and everything that can be taken hold of and identified as the property or rights to property of the defendant.

Now, when the lien as created by the demand is of such a character, it is reasonable and it is proper that all the steps which the law requires of the party creating the lien in his own favor shall be pursued strictly. One of the evidences of that must be a demand for the payment of the taxes. Another one, it seems to me, ought to be a demand for the specific amount to be paid.

In all of these alleged demands there is no demand, literally or philologically speaking, for the payment of any tax whatever. There is no demand for any specific amount averred, and surely a lien attended by such consequences as this one ought to have the amount stated with particularity in order to permit its enforcement.

It is to be observed that all this is a very different thing from the collection of the taxes by the ordinary process of distraint, or by a suit against a party for the amount of them. In an action of debt no such demand is necessary for the collection, as the supreme court of the United States has decided, because when the dividends are declared or the interest paid the law annexes to it the obligation to pay five per cent on that amount. But the law does not annex to that any lien on a man's property. The law does not annex to those taxes as taxes ex proprio vigore any lien. It is different from the statutes concerning the distillation of spirits, in which the penalties are so heavy and where all the stills, houses, real estate, etc., are made liable from the beginning for the taxes, and a lien created on them from the moment they become due, without any act of the government. Those are different taxes, collected under different circumstances. Here the act that constitutes and creates the lien is the demand. Without the demand there can be no lien, but with a just and proper demand, made in a proper way, the officer creates the lien by the very act of making the demand.

It is not necessary to go any further. We are of the opinion that no such demand has been made as will authorize the United States to come into court by a bill in chancery to enforce a lien created by such demand.

The demurrer of the defendants to the bill of complaint is sustained. Demurrer sustained.

The district attorney took leave again to amend the bill of complaint.