KRATZMER *v.* DETROIT LUMBER CO.

1. CHATTEL MORTGAGES—RENEWAL—AFFIDAVITS—STATUTES.
    An attempted renewal of a chattel mortgage filed nearly eight months before the expiration of the year in which it was originally filed is not in compliance with 3 Comp. Laws 1915, § 11991, providing that a chattel mortgage shall cease to be valid as against the creditors of the person making the same or subsequent purchasers or mortgagees

in good faith after the expiration of one year from filing the same or a copy thereof, unless within thirty days next preceding the expiration of such year an affidavit of renewal shall be filed.

2. SAME—RENEWAL—ATTACHMENTS—NOTICE.

A renewal affidavit is not necessary in order to render a recorded chattel mortgage valid as against an attaching creditor, where public notice was given of the sale of the mortgaged property and an attorney for the mortgagee was in possession of the property and was on the point of selling the same at public auction when the property was seized by the attaching creditor.

3. SAME—ATTACHMENTS—MORTGAGE LIEN—NOTICE.

Where an affidavit for the renewal of a chattel mortgage is invalid because filed more than thirty days before the expiration of the year in which the mortgage was originally filed, and an attaching creditor has both constructive and actual notice of the claims of the mortgagee before his attempt to levy an attachment at the time the property is about to be sold at foreclosure, the mortgage lien is perpetuated and remains paramount to the attachment lien.

4. SAME — ATTACHMENTS — CONVERSION — NOTICE OF MORTGAGEE'S RIGHTS.

The seizure and sale of personal property, which is about to be sold under a mortgage, an invalid renewal of which was filed, by an attaching creditor, constitutes an unlawful conversion of the property where the attaching creditor had both constructive and actual notice of the rights of the mortgagee before levying its attachment.

5. SAME—VALUE OF PROPERTY—EVIDENCE—DAMAGES.

In an action by a chattel mortgagee against an attaching creditor to recover for the conversion of the mortgaged property, which was seized by the attaching creditor and sold, evidence *held,* sufficient to sustain a finding that the property taken and converted by the defendant had a market value at the time and place of the seizure equal to the amount of the verdict, which was for the amount of plaintiff's lien without interest.

Error to Wayne; Holly, J. Submitted January 4, 1917. (Docket No. 33.) Decided March 30, 1917.

Trover in justice's court by Israel Kratzmer against the Detroit Lumber Company and another for the conversion of certain property. From a judgment for defendants plaintiff appealed to the circuit court. Judgment for plaintiff. Defendants bring error. Affirmed.

*Berger & Milburn,* for appellants.

*Abram Sapiro,* for appellee.

STEERE, J. On January 6, 1914, plaintiff lent $1,250 to a partnership known as the Detroit Box Manufacturing Company, located in a factory building at 21 Leland street, Detroit, engaged in the manufacture of cigar boxes, taking a note therefor secured by chattel mortgage upon its stock of machinery, lumber, fixtures, etc., "and all other goods and chattels belonging to said firm as a going business," then "situated at 21 Leland street in the city of Detroit," etc., which was represented to him as having cost over $4,000. The mortgage was regularly filed in the office of the city clerk on March 18, 1914. On July 8, 1914, a payment of $450 was made upon it, at which time plaintiff filed a renewal affidavit. Further payments were made, reducing the indebtedness to $300, which, being past due, plaintiff tried unsuccessfully to collect, and then engaged an attorney to enforce the mortgage, who soon took steps to foreclose the same. On April 10, 1915, he posted notice of foreclosure on the factory building of the box manufacturing company, advertising the sale for April 16, 1915, which was adjourned by proper notice to April 23, 1915. Like notices were also posted in front of the city hall. At that time, the box manufacturing company was apparently in financial straits, and the factory was not running. The record is silent as to whether any one representing the mortgagor was in charge of the property or

present at the factory on April 23d, but it is shown that plaintiff's attorney was then on the premises and in the building where the mortgaged property was located, for the purpose of conducting the foreclosure sale at the time and place advertised, and was either sitting in the office awaiting the arrival of the advertised hour, or had announced the sale and was about to offer the mortgaged property, when defendant Romanski, a constable, appeared with a writ of attachment sued out against the box manufacturing company at the instance of the Detroit Lumber Company, and took possession. Plaintiff's attorney testified that he had announced the sale and called for bids when the constable interfered. On cross-examination he answered as follows:

"*Q.* At the time the constable arrived, you had not started the sale, but were sitting in the office waiting until 12 o'clock?

"*A.* I think it was after 12 that the constable arrived.

"*Q.* Your sale was noticed for 12?

"*A.* Yes.

"*Q.* After you got through, you went ahead and made the offer of the sale while we were there after the constable had taken possession of the building and said to get out?

"*A.* That is true, but I had the announcement that the sale was going to take place on this property."

Having thus "taken possession of the building" and its contents, broken up the pending foreclosure sale and ordered plaintiff's representative to "get out," defendants proceeded with the attachment levy, inventoried and removed the property seized, subsequently proceeding to a judgment in the attachment suit against the box manufacturing company for $490 and costs, followed by an execution levy and sale, from which defendants claim but a small part of the judgment was realized.

Demand was made in behalf of plaintiff for a return

of the property so seized, both of the constable and Detroit Lumber Company, which was refused; and this action in trover was subsequently begun and tried in justice's court, followed by an appeal to the Wayne county circuit court, where, on retrial, it was held that under the undisputed facts defendants were guilty of unlawful conversion of mortgaged property, and plaintiff was "entitled to a verdict fixed by the jury as the value of the property taken to the extent of his lien." The jury rendered a verdict in plaintiff's favor for $300, upon which judgment was entered for that amount.

Defendants' assignments of error are grouped into the following propositions:

"(1) That the court erred in denying defendants' and appellants' motion for direction of verdict in their favor.

"(2) Because the court erred in failing and refusing to grant the defendants' and appellants' motion for a new trial.

"(3) Because the court erred in failing and refusing to give the defendants' and appellants' fifth and sixth requests to charge.

"(4) Because the court erred in charging the jury as follows: 'Now, as this case is going to you, you are obliged to bring in a verdict for the plaintiff if you find that there was any value to the property that was taken from them.'"

The first contention is based upon the claim that under section 9526, 3 Comp. Laws (3 Comp. Laws 1915, § 11991), plaintiff's chattel mortgage had ceased to be valid as to creditors having a lien, over a year having expired from the time of filing it, and the Detroit Lumber Company had in good faith obtained a valid lien upon the mortgaged property by levying its writ of attachment before any renewal affidavit was filed.

Plaintiff's attempted renewal, filed nearly eight months before the year expired, July 8, 1914, was

clearly not in compliance with the statute, and therefore of no validity. Defendants had refused to recognize plaintiff's chattel mortgage or his attempted foreclosure under it as of any force, and no question of a seizure of the property in subordination to the mortgage under section 10318, 3 Comp. Laws (3 Comp. Laws 1915, § 12855), is involved. Neither is there any question raised as to the integrity of the demands of the respective parties against the Detroit Box Manufacturing Company. Plaintiff's was for money loaned, and defendants' for material sold in due course of business. Plaintiff's loan was secured by a chattel mortgage which had been properly filed, but which he neglected to renew at the expiration of the year, leaving it open to the hazard of becoming invalid as to a subsequent purchase or mortgage, or lien obtained upon the mortgaged property in good faith while it was in the possession or under control of the mortgagor. Had the Detroit Lumber Company obtained a lien thereon in good faith by an attachment levied upon the mortgaged property while in possession of the mortgagor and before any steps were taken to foreclose, the mortgage would undoubtedly have been invalid as against such lien; but it did nothing to that end until plaintiff had exercised his right to foreclose and his agent was with the property on the premises, at the time and place advertised, offering or about to offer the mortgaged property at public sale in consummation of the foreclosure.

It stands unquestioned that the mortgage was given in good faith to secure an honest debt for money loaned, was valid between the parties to it at all times, and, after expiration of a year from the time of filing, only vulnerable to attack by those who became purchasers, mortgagees, or had obtained a lien thereon in good faith before an affidavit of renewal was filed. The year expired March 18, 1915. Being otherwise

unable to collect the amount remaining due under said mortgage, plaintiff, on April 10, 1915, proceeded to foreclose the same. No irregularity in the foreclosure proceedings, as such, is pointed out. The mortgage was then in full force and in default. Defendant had not obtained any lien on the mortgaged property in good faith, or otherwise, and took no steps to do so until April 23d, at which time the property was about to be sold at foreclosure sale pursuant to notice, as before related. It is said in 2 Cobbey on Chattel Mortgages, § 597:

"Taking steps to foreclose the mortgage by advertising the property, commenced while the mortgage is in full force, obviates the necessity of refiling, though the foreclosure is not completed until the time is past for refiling. * * * The public are entitled to notice, which, after the mortgage has been once filed, can only be given, beyond the statutory time during which the record is notice, as follows, viz.: (1) By taking possession; (2) by commencing to foreclose; (3) by making a new record—that is, refiling."

In *Thompson* v. *Van Vechten,* 5 Abb. Prac. (N. Y.) 458, involving the question of priority of claims between the contending parties, one of which depended upon a sale of a boat under a chattel mortgage by one Dunlap who had advertised it for sale but not taken actual possession when the other claim was asserted, the court said:

"On June 28, 1854, Dunlap took measures to foreclose his mortgage and sell the vessel. This was equivalent to an assumption of possession. * * * The result of the cases seems to be that, if the mortgage is duly filed, the mortgagee is placed in a position to excuse his omission to take possession; if not filed, he cannot be admitted to explain it. See the statement of the rule and cases by Justice Paige, in *Otis* v. *Sill,* 8 Barb. 108. That case decided that the assertion of a right of control by advertising the property for sale before an execution was delivered to the sher-

iff, dispensed with the necessity of refiling a mortgage, which strictly ought to have been refiled before the delivery of the execution."

In the instant case, the testimony, though scant in details, shows more than mere assumption of possession by advertising the mortgaged property for sale. By the terms of the mortgage, in case of default, plaintiff was authorized to enter upon the premises where the property was located, take possession of and sell the same at public auction upon like notice as required by law for sales by constables. Not only was public notice of the sale accordingly given and notices posted both upon the premises where the property was located and in front of the building in which the chattel mortgage had been filed, but at the advertised time and place, for the express purpose of making this public sale, plaintiff's authorized agent had entered upon the premises where the property was located under the right which the law gave him, the only person with and exercising any dominion over it so far as shown, and confronted defendants' agents with assertion of his mission and purpose when they arrived and ordered him to get out. His meager admissions touching that episode leave to inference whether his reasons for complying were physical or legal. Plaintiff had the right to go upon the premises, take the property, and sell it at public sale to satisfy his mortgage. On the day of sale his agent was at the appointed place, on the premises with the property where he could exhibit it for sale and deliver it when sold without opposition or his right questioned by the mortgagor or those previously in possession, so far as shown. He not only advertised the property for foreclosure sale, but had followed the notice by acting upon his right to enter on the premises where the property was, in assertion of his authority over it for the purpose of such sale, which, under the un-

disputed facts, was equivalent and amounted to an assumption of possession for that purpose not to be misunderstood.

It is not shown that defendants extended any credit to the mortgagor on the faith of an apparently clear title subsequent to the expiration of a year from the time of filing the mortgage either before or after the property was advertised for sale, and upon this record, as we view it, the primary issue between these litigants turns upon priority of lien. Defendants had not obtained a lien in good faith upon the mortgaged property until after plaintiff commenced foreclosure, advertised the property for public sale during the requisite time, assumed dominion over and in effect taken possession of it at the place and on the day designated for the purpose of consummating the sale. Defendant had both constructive and actual notice of this before it attempted to levy its attachment. The mortgage lien was thereby perpetuated and remained paramount. Against it defendant's seizure was, under the facts shown, an unlawful conversion of the property, and the trial judge was not in error when advising the jury that, if they found there was any value to the property taken, a verdict should be rendered in plaintiff's favor.

Defendants further urge that their motion for a new trial should have been granted because the verdict was against the great weight of evidence and grossly excessive.

The verdict of $300 was the amount of plaintiff's lien without interest, and is claimed to have been excessive because the property was worth and sold for but a fraction of that amount. A junk dealer called by plaintiff testified that he saw notices of this sale in front of the city hall and went to look at the property with a view to buying it when sold; that he made a thorough examination of it for that purpose and

estimated a fair valuation as between $500 and $600; that "we" would not pay full cost value for "things," but if he could buy the property at that price he would have bought it, figuring to make something out of it, and he was there on the day set for the sale intending to bid on the property.

Under his writ of attachment, the constable was directed to seize sufficient property of the box manufacturing company to satisfy the lumber company's claim, amounting to about $500. Presumably he did so after taking possession of the building, if sufficient property could be found. He was not called as a witness, but his inventory of property seized under the writ is as follows:

"Combination rip and cross-cut saw table; Pony planer and counter-shaft; 2 factory trucks; 1 typewriter; 40 ft. belts 3"x5"; 8 chairs; 1 wagon; 1 desk; box board machine; 2 boring machines; 1 nailing machine; 1 iron safe; 1 register clock; 30 ft. shaft; 11 hangers and boxes; 1 saw gummer; 1 rip saw; 1 barrel oil."

This property was taken to the Detroit Lumber Company's plant and subsequently sold in bulk, as testified by its secretary, except a safe and nailing machine which were claimed and taken by third parties. A witness of defendant testified the nailing machine was worth about $75, and the junk dealer appraised the safe at $25. The court withdrew these two articles from consideration of the jury. An employee of the lumber company testified that after they got possession of the property it was there for several months. Neither he nor the company's secretary and treasurer, who testified the property was sold in bulk and but $30 realized from the sale, were present when it was sold.

The value of the property attached and taken was a question of fact. There was substantive proof to support the widely divergent claims of the respective

parties. It appears undisputed that plaintiff, who had experience as a junk peddler himself, loaned the box manufacturing company $1,250 in cash on the machinery, fixtures, etc., in its plant; that the owners, who told him the property cost over $4,000, subsequently paid $950 of the loan; that on the date advertised for foreclosure sale to collect the remaining $300, a junk dealer who had examined the property proposed for sale with a view to purchasing it was on hand ready to bid more than $300 for what was there, deducting the highest value given by any witness for the safe and nailing machine. Defendants seized and took the property, thus preventing the sale. We are well satisfied there was competent testimony in the case from which a jury in its discretion might find that the property taken and converted by defendants had a market value at that time and place equal to the amount of the verdict. The question of its value was fairly submitted by the court to the jury in a plain and well-guarded charge. We find no occasion to disturb the result.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.