WETHERED, Trustee *v.* ALBAN TRACTOR COMPANY et al.

[No. 140, September Term, 1960.]

410

*Decided March 9, 1961.*

*Motions for modification or rehearing filed April 10, 1961, denied April 12, 1961.*

The cause was argued before Henderson, Hammond, Prescott, Horney and Sybert, JJ.

*Harrison M. Robertson, Jr.,* and *Francis N. Iglehart, Jr.,* for appellant.

*Nathan Patz* and *Lawrence A. Kaufman,* for Alban Tractor Co., Inc. and Herbert L. Wynne, Trustee, two of the appellees.

*Arnold Fleischmann,* with whom was *Lawrence I. Weisman* on the brief, for Plaza Corporation, the other appellee.

Hammond, J., delivered the opinion of the Court.

A bankruptcy trustee, seeking to capture for the estate the proceeds of sale on foreclosure of an unrecorded chattel mortgage given by the bankrupt, contends on appeal from a decree rejecting his claim that he stands in the shoes of lien creditors who could have set aside the chattel mortgage and, therefore, that the mortgage and its foreclosure were ineffective as to him.

The problems the case presents arise out of the financing procedures of the bankrupt, a corporation known as John B. Gaither, Jr., Inc., and are not entirely new to this Court. Two aspects of them have been before us on prior appeals. In *O'Toole Tire Co. v. John B. Gaither, Jr., Inc.,* 216 Md. 54, it was held that Gaither's legal corporate residence was Baltimore County, not Baltimore City as was claimed. In *Plaza Corporation v. Alban Tractor Co., Inc.,* 219 Md. 570 (hereinafter referred to as "the *Plaza-Alban* case"), the holding was that as between Plaza's and Alban's respective mortgages, neither of which was recorded in Baltimore County, Plaza's was superior as having been first executed.

In October 1954 Gaither purchased from Alban various

construction and contracting machines on a conditional contract of sale in the amount of some $200,000. On December 1, 1954, Gaither gave Plaza a mortgage covering some of the chattels covered by Alban's conditional contract, other chattels and real estate. The mortgage was sent to the clerk of the Circuit Court for Baltimore County, who recorded and indexed it in the Land Records but did not list it in the chattel index. In May 1955 Alban sold Gaither $119,000 worth of additional machinery, paid off the bank to which it had assigned the conditional sales contract of 1954 and took a mortgage from Gaither which covered the newly purchased machinery and that which had been in the conditional contract. This mortgage was promptly recorded in Baltimore City but also has never been recorded in Baltimore County.

Gaither defaulted in the payment of the 1955 mortgage to Alban, which filed a petition seeking foreclosure in the Circuit Court No. 2 of Baltimore City on November 5, 1956. That same day a decree was passed, appointing the attorney named in the mortgage as Alban's agent, the trustee to make sale. On the two following days Alban repossessed the various pieces of machinery and equipment covered by its mortgage, all of which apparently were then in Baltimore City, and stored them in its yard in the City, open to inspection prior to the sale which was duly and widely advertised to take place there on December 1, 1956. At the sale $67,200 was realized on the chattels named in both the Alban and Plaza mortgages, and $81,300 on those covered only by the Alban mortgage from purchasers who paid cash in full and took away their purchases. Plaza filed exceptions to ratification, and on June 6, 1957, the sale was ratified under a stipulation that the respective rights of Plaza and Alban in the chattels would carry over to the proceeds of sale. Later, the chancellor dismissed the exceptions, holding that Gaither's principal office was in Baltimore City and, therefore, Alban's mortgage had been properly recorded there, and Plaza's mortgage was unrecorded.

On Plaza's appeal in the *Plaza-Alban* case, we reaffirmed the *O'Toole* holding that Gaither's legal residence was Baltimore County and held that both mortgages were unrecorded

in that jurisdiction, the rights of the holders of unrecorded mortgages is determined by priority of execution and Alban did not come under the protection given a subsequent mortgagee against a prior unrecorded mortgage by Code (1957), Art. 21, Sec. 41, because that section contemplates that a subsequent mortgage must be recorded if it is to prevail. Thus Plaza's mortgage, executed in 1954, was held to come ahead of Alban's, executed in 1955.

On May 12, 1958, Gaither was adjudicated an involuntary bankrupt. The trustee in bankruptcy sought to intervene in Plaza-Alban's appeal to this Court and was denied leave, but granted the right to file a brief as *amicus curiae*. His brief challenged the jurisdiction of the Baltimore City equity court to foreclosure the Alban mortgage.

After the reversal in the *Plaza-Alban* case, the trustee in bankruptcy filed pleadings in the foreclosure proceedings, claiming (a) the court lacked jurisdiction to foreclose Alban's mortgage; (b) its mortgage was void and did not pass or transfer any property as against the trustee because it was not recorded in the proper place; (c) the United States has claims against Gaither "provable under the Bankruptcy Act," underlying a tax lien on all of Gaither's property and property rights, which had been assessed on August 22, 1956, several months before the mortgage foreclosure (and on which notice of tax lien had been filed in Baltimore City on December 27, 1956, and in Baltimore County the next day) and four other similar assessments made in 1957 and 1958 (as to which notices of lien also were duly filed soon after assessment);[1] (d) the State of Maryland and Baltimore County have claims for various kinds of taxes provable in bankruptcy which were "quasi-liens"; (e) the Federal and State and local liens were superior to the mortgage; and (f) under various sections of the Bankruptcy Act the mortgage was null and void as against the trustee, the chattels therein described remained Gaither's property and the trustee is

---

1. The appellant, the trustee in bankruptcy, bases his right to prevail primarily on the 1956 assessment of $305.06 and the conclusions we reach as to that make the other four later assessments of no significance in the determination of the case.

entitled to be paid the proceeds of sale for the benefit of unsecured creditors.

The trustee's main reliance is on section 70 (e) of the Bankruptcy Act (11 U. S. C. A., Section 110 (e) (1), (2) (1953)). His argument is that liens on all Gaither's property and rights in property were created by Sections 6321, 6322 and 6323 of the Internal Revenue Code of 1954 (26 U. S. C. A., Secs. 6321, 6322 and 6323 (1955)), as to the $305.06 Federal assessment of August 22, 1956, and as to the State and County tax claims, by virtue of which the Federal Government or the State or County could have set aside the unrecorded mortgage, and he, under the express provisions of Sec. 70 (e) is put in the shoes of the lienors.

Section 70 (e) provides: "(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor." "(2) * * * The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws."

Code (1957), Art. 21, Sec. 41, as amended in 1949, provides that "No personal property * * * whereof the vendor, mortgagor, or donor shall remain in possession, shall pass, alter or change, or any property therein be transferred to any purchaser, mortgagee or donee, as against subsequent purchasers, mortgagees, incumbrancers, landlords with liens, pledgees, receivers, and creditors who acquired a lien by judicial proceedings on such personal property, unless by bill of sale or mortgage acknowledged and recorded as herein provided * * *."

It becomes apparent that the correctness of the trustee's contention turns on whether the Federal Government or the State or Baltimore County came within one of the catagories entitled to prevail over an unrecorded mortgage by Sec. 41

of Art. 21. *Tatelbaum v. National Store Fixture Sales Co.,* 196 Md. 599, 604; the *Plaza-Alban* case. If it does apply, the effect of Section 70 (e) is far-reaching and startling. For example, if the Federal Government had a lien for $305.06 which became superior to that created by Alban's mortgage, in actuality Alban would have paid the $305.06 so as to protect its lien for several hundred thousand dollars. However, if the bankruptcy trustee is entitled to step into the shoes of a superior lienor or encumbrancer, he can nullify the mortgage entirely, obtain $148,000 because the bankrupt owed $305.06, and relegate the mortgagees to the status of unsecured creditors.[2] This result was approved in *Moore v. Bay,* 284 U. S. 4, 76 L. Ed. 133, and the holding of that case was incorporated into Sec. 70 (e) by the Chandler Act. If the trustee is right, unsecured creditors of Gaither, as to whom the mortgage would be valid and superior under Maryland law, would share in bankruptcy in the proceeds of sale of the mortgaged chattels. See MacLachlan, *The Impact of Bankruptcy on Secured Transactions,* 60 Col. L. Rev. 593, 599, 604, 606.

We think neither the State, Baltimore County nor the United States had a lien on any chattel of Gaither covered by the mortgage before it was sold to a bona fide purchaser and that the day of the sale marked the close of the period in which any creditor could acquire a lien upon Gaither's property or right of property in the mortgaged chattels. There was no State or local lien because the Maryland statutes neither create a lien for unpaid taxes other than those on real estate nor purport to do so, and this Court has held that no such lien arises short of execution or distraint; and there was no federal lien because that government made no demand upon Gaither for the payment of any tax (a mandatory, statutory prerequisite to the creation of such a lien) at a time when Gaither had any property or rights of property to which a lien could attach.

---

2. Plaza would not be entirely displeased by this, as its brief and oral argument admit, since its claim as an unsecured creditor would be approximately 75% of all unsecured claims.

The Supreme Court in *Aquilino v. United States,* 363 U. S. 509, 513, 4 L. Ed. 2d 1365, 1368, and *United States v. Durham Lumber Co.,* 363 U. S. 522, 526, 4 L. Ed. 2d 1371, 1374, delineated with definiteness the rules determining the effect of the statutes creating federal tax liens. They said that the issue is whether, and to what extent, the taxpayer had property or rights in property to which the tax lien could attach. The lien sections, the Court reiterated, create no property rights but merely attach consequences, federally defined, to rights created by State law, citing *United States v. Bess,* 357 U. S. 51, 55, 2 L. Ed. 2d 1135, 1140. State law controls in determining the nature and extent of the legal interest which the taxpayer had in the property sought to be reached by the lien but once the lien has attached to the taxpayer's state created interest, federal law determines the priority of competing liens asserted against his property or rights therein.

The claims of the State were for income and sales taxes, contributions to Maryland unemployment compensation and premiums for compensation insurance. Baltimore County's claim was for tangible personal property taxes for 1955 and 1956. Neither the State nor the County was a lienor or incumbrancer. The statutes do no more than establish a priority of payment for unpaid taxes, other than those upon real estate, upon a sale of the property of a debtor by any ministerial officer "under judicial process or otherwise." Code (1957), Art. 81, Sec. 202. This does not establish a lien. *Thompson v. Henderson,* 155 Md. 665; *In re Beardsley,* 38 F. Supp. 799, 804. See also *Rouse v. Archer,* 149 Md. 470. There is a lien for such taxes only after levy and distraint. *Union Trust Co. v. Belvedere Bldg. Co.,* 105 Md. 507.

The critical claim of the Federal government was for taxes withheld from income and Federal Insurance Contribution Act taxes. The trustee in bankruptcy produced evidence below that Gaither's return for the second quarter of 1956, which was due on or before July 31, 1956, was not received until August 3 (although Gaither's auditor testified it was mailed on July 31, which would have made it timely filed),

and that no remittance for the $5,705.32 shown to be due accompanied the return. On August 14, Gaither paid the $5,705.32 which should have been paid by July 31. Nevertheless, on August 22 the United States entered an assessment against Gaither for $5,705.32, plus penalty of $285.27 for late filing and, apparently, interest from July 31 to August 22 in the amount of $19.79 (since payment was made on August 14 the interest due actually would have been some $13.00). On August 22, Gaither was sent Form 17 "Statement of Tax Due on Employer's Quarterly Federal Tax Return (income tax withheld for wages and FICA taxes)." It showed "Assessment (1)" of $8,978.05 and "Pen." $285.27, or a total of $9,263.32 and a credit of $3,272.73 (which had been paid June 15, 1956), leaving a "Balance due" shown as $5,990.59. The credit allowed should have been increased by the $5,705.32 paid August 14, 1956, which would have left a balance due of $285.27.

On Form 17 the legend "(1)" following the heading "Assessment" referred to a note reading as follows: "(1) 'P' denotes penalty, 'I' denotes interest." No interest was shown or demanded on the form sent Gaither. A recital on the form said: "According to our records the tax was not paid in full. You will be saved inconvenience and *further expense* by making payment of the *'Balance due'* within 10 days of the date of this notice." (Emphasis supplied.) The only "expense" shown on the form was the penalty and the "Balance due" included the penalty but no interest. The trustee's witness, an attorney who was chief of the special procedure section of the Internal Revenue Service of the United States at Baltimore, testified that the usual practice was not to assess or collect interest if the amount demanded was paid in ten days and, referring to the recital that "further expense" would be avoided by payment within ten days, said: "That is the statement contained in form 17, notice of payment." He also testified that "Apparently the form 17, notice of demand, has omitted to claim assessed interest of $19.79."

The notice of lien filed in the Superior Court of Baltimore on December 27, 1956, and the Circuit Court for Baltimore

County December 28, 1956, recited (substantially in the language of the statutes) that pursuant to Sections 6321, 6322 and 6323 of the Internal Revenue Code of 1954, notice is given that there have been assessed against the named taxpayer "taxes (including interest and penalties) which after demand for payment thereof remain unpaid, and that * * * the amount of said taxes * * * is a lien in favor of the United States upon all property and rights to property belonging to said taxpayer." The amount of the assessment is shown only as $305.06.

It is plain from the record that the Federal government has no claim provable in bankruptcy which became a lien on the mortgaged chattels. The trustee concedes that the penalty assessed is not a provable claim. Sec. 57, Sub. j of the Bankruptcy Act (11 U. S. C. A., Sec. 93, Sub. j (1960 Supp.)) so specifies as to a debt owed the United States or any State or subdivision thereof as a penalty and the Court of Appeals for the Fourth Circuit held in *United States v. Harrington*, 269 F. 2d 719, 725, that a penalty remains unprovable even though it is secured by a perfected lien. Although there are contrary holdings by other lower Federal Courts, the Supreme Court by its decision that the allowability of a claim underlying a judgment lien on a judgment against a bankrupt could be inquired into (*Pepper v. Litten*, 308 U. S. 295, 84 L. Ed. 281), and its later statement that the Court "may also adjudicate questions pertaining to the amount of a tax claim secured by a lien * * *. There is, for example, the question whether the amount of the claim has been swollen by the inclusion of a forbidden penalty and thus to that extent does not meet the bankruptcy requirements for proof and allowance of claims." (*Gardner v. New Jersey*, 329 U. S. 565, 580, 91 L. Ed. 504, 518), has indicated that Judges Sobeloff, Haynsworth and Barksdale were right in their holding in *Harrington*.

The interest included in the amount of $305.06 specified in the notice of lien duly recorded is provable in bankruptcy but no lien ever arose as to it because it was never demanded to be paid. Section 6321 creates a lien only if a person ow-

420

ing a tax "neglects or refuses to pay the same after demand." The trustee's own witnesses and exhibits demonstrated there had never been a demand for the interest. (Indeed, the impression created by Form 17 would be that interest was not being assessed.) In such situation the Courts have held that no lien arises and that the mere recital in the notice of lien filed in the appropriate land or chattel records that it is for taxes "which after demand for payment thereof remain unpaid" lacks the necessary specificity to constitute the required statutory demand. In *United States v. Pacific Railroad Co.*, 27 Fed. Cas. 399, 401 (No. 15,984) (C. C. E. D. Mo.), the Court said that to create the lien all requisite prescribed steps must be "pursued strictly" and that "One of the evidences of that must be a demand for the payment of taxes. Another one, it seems to me, ought to be a demand for the specific amount to be paid." The Court, in the case of *In re Crockett*, 150 F. Supp. 352, 354 (D. C. N. D. Cal.), said that by the plain wording of the statute "the lien does not attach unless and until the delinquent taxpayer 'neglects or refuses to pay the same after demand' " and that it was incumbent on the United States to show that the statutory prerequisites have been fulfilled before it can be treated as a lien creditor. The District Court for the District of Massachusetts made the same holding in *Sherman B. Ruth, Inc. v. O. S. V. The Marie and Winifred*, 150 F. Supp. 630, 632, and added: "The mere formal reference in the notice of tax lien to 'taxes (including interest and penalties) which after demand for payment thereof remain unpaid' is not a sufficient demand for payment of the tax to provide basis for a tax lien." *Cattani v. Korsan* (Super. Ct. N. J.), 103 A. 2d 51, held the United States must prove that demand was made if its lien is to exist and the statement in the notice of lien duly filed is not sufficient to satisfy the mandatory requirement of demand. See also *United States v. Allen* (C. C. M. D. Tenn.), 14 F. 263; *In re Holdsworth* (D. C. N. J.), 113 F. Supp. 878; *Goldstein v. Bankers Commercial Corp.* (D. C. S. D. N. Y.), 152 F. Supp. 856, 859, aff'd 257 F. 2d 48; *United States v. Kentucky* (Ky.), 288 S. W. 2d 664. Cf. *United States v. Brechtel* (C. C. A., 8th), 90 F. 2d 516.

It is conceded that the chattel mortgage given by Gaither to Alban was made in the ordinary course of business in entire good faith and for full value. It was valid and enforceable in a court of equity as a lien not only between Gaither and Alban but as to every one else who was not within one of the seven protected classes under Code (1957), Art. 21, Sec. 41—that is as against all but a subsequent purchaser, mortgagee, incumbrancer, landlord with lien, pledgee, receiver or a creditor with a lien acquired by judicial proceedings. *Plaza-Alban* case (588-589 of 219 Md.). See also *Textor v. Orr,* 86 Md. 392; *Goldsborough v. Tinsley,* 138 Md. 411, 419; *Tatelbaum v. National Store Fixture Sales Co.,* 196 Md. 599. * * * A court of equity has inherent power to enforce the lien of a mortgage whether it be recorded or unrecorded. *Jackson v. County Trust Co.,* 176 Md. 505; *Goldsborough v. Tinsley, supra;* Restatement, *Restitution,* Sec. 161, page 650 (1937); *Sanford v. Boland* (N. Y.), 40 N. E. 2d 239. The opinion in the *Plaza-Alban* case, 577, pointed out that "Foreclosure of mortgages after default has long been peculiarly within a court of equity's jurisdictional powers" and that the provisions of Code (1957), Art. 66, Sec. 6, under which Alban proceeded, simply provides "an expeditious and economical summary model procedure for the exercise of an ordinary jurisdiction." See Jones, *Chattel Mortgages,* Sec. 776 (6th Ed.). It was implicit in the holding of the *Plaza-Alban* case that the court below had jurisdiction to, and effectively did, foreclose Alban's mortgage. We confirm explicitly here what was there implicit. The chattels being sold were in Baltimore City, and the parties were before a court which had inherent power to order and consummate the sales that were made in the enforcement of the mortgage security title. All the parties in interest were represented in the prior appeal; Gaither was a defendant and the trustee in bankruptcy filed a brief as *amicus curiae.* The *Plaza-Alban* decision established that the Alban mortgage was valid and the sale under foreclosure effective to pass title to the chattels sold. The trustee has not shown that any lien in favor of the United States came into being before all property or

rights to property in the mortgaged chattels passed from Gaither, its debtor, and therefore it was not a lienor or incumbrancer as to those chattels. The trusteee in bankruptcy has no lien shoes in which to step so as to set aside the Gaither mortgage to Alban.

If it be assumed that the United States acquired a lien on December 27, 1956, when it filed the notice of lien, the trustee's position under Section 70 (e) of the Bankruptcy Act would not seem to have been improved. The Federal lien was a general lien inferior to the claim of a purchaser until filed under the federal statute, Sec. 6323 (a) of the Internal Revenue Code ("The lien imposed by Section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed * * *."). As to all against whom it was effective, it would have been, from the time it arose, a lien comparable to that of a judgment creditor on the real property of his debtor. It was held in *Union Trust Co. v. Biggs,* 153 Md. 50, 56, that a judgment obtained after the day of sale of real estate in a foreclosure proceeding and before the day of confirmation of the sale by the court did not become a lien on the real estate. It was pointed out that legal title does not vest in the purchaser at a foreclosure sale until the price is paid and a deed is delivered but that the deed is effective, not merely from the day of its execution, but vests the property in the purchaser from the day of sale. The Court said: "The day of sale, therefore, marked the close of the period in which any creditor could acquire a lien upon the mortgagor's interest in the mortgaged land or equity of redemption by simply obtaining a judgment against the mortgagor, since a judgment lien upon real estate or an equitable interest in land only exists because it gives the judgment creditor the right to make his debt out of the land or equitable interest in land of the judgment debtor, with the correlative liability of such property of the debtor to be sold by way of execution for that purpose."

In the case before us the chattels were sold for cash in full and delivered to bona fide purchasers on December 1,

1956, twenty-six days before the first notice of lien for $305.06 was filed by the United States. Payment in full of the purchase price and delivery of the chattel to the buyer generally is all that is required to vest full legal title in the purchaser. Certainly Gaither, which had explicitly authorized the sale in its contract with Alban, embodied in the chattel mortgage, could not complain that its rights of property in the chattels ended when bona fide purchasers paid for them and took them away, and its creditors without liens are in no better position. By the terms of the chattel mortgage (which appears in the record of the *Plaza-Alban* appeal in this Court) Alban became entitled to possession upon default and Gaither authorized Alban or its named attorney or agent, in such case, "to sell the hereby mortgaged property." Gaither further agreed that after default, unless legal tender were made of the principal, costs, expenses and commissions before the advertised day of sale, the sale could be proceeded with. This could be construed as an agreement that the right to redeem ceased as of the time of sale.

In Maryland, where a mortgage passes legal title to the mortgagee, the right to possession follows the title and, in the absence of agreement, the mortgagee is entitled to hold the mortgaged chattels. In practice, the mortgage in terms usually gives the mortgagor the right to retain possession until default. Immediately upon default the mortgagee has the full right to take the chattels. *Shorter v. Dail,* 122 Md. 101, 105. After default the mortgagee may maintain trover as to the mortgaged chattels, *Burton v. Jennings,* 158 Md. 254, 257, or sue one who has converted them in assumpsit for the sales price, *Leighton v. Preston,* 9 Gill 201, 203. At the old common law the title of the mortgagee became absolute upon default without foreclosure and there was no right to redeem. Now an opportunity to redeem is required. *Dungan v. Mutual Benefit Life Ins. Co.,* 46 Md. 469, 491. That case held that a life insurance policy could be mortgaged and that after default and due notice to the mortgagor to redeem, the mortgagee may "proceed to sell, without the trouble and delay of bringing a bill to foreclose; and in such case the title, if the sale be *bona fide* made, will vest absolutely in the vendee."

We think that Gaither's right to redeem ceased with the fully advertised and fairly held sale to bona fide purchasers who paid cash in full. As the Court of Appeals for the Fourth Circuit said in *United States v. Durham Lumber Company,* 257 F. 2d 570, 574, affirmed 363 U. S. 522, 4 L. Ed. 2d 1371: "If the delinquent taxpayer has no right under state law, there is nothing upon which the tax lien may attach." The sale did not produce enough to satisfy the mortgage debt so Gaither and his creditors had no rights as to the cash in the foreclosure trustee's hands. The Supreme Court in *United States v. Brosnan,* 363 U. S. 237, 4 L. Ed. 2d 1192, held that sales of property under State liens superior to Federal tax liens, which were valid to pass title, extinguished the Federal liens.

We need not determine whether the taking of possession after default, the foreclosure decree and the advertising of the sale were the equivalent of recording so as to mark the point in time when a lien of a creditor of Gaither's could attach ahead of the lien of Alban's mortgage. There is authority that they would have been such an equivalent. *Kratzmer v. Detroit Lumber Co.* (Mich.), 161 N. W. 817. See also *Goggin v. Division of Labor Law Enforcement,* 336 U. S. 118, 93 L. Ed. 543; *United States v. Sands* (2nd Cir.), 174 F. 2d 384; *Brust v. Sturr* (2nd Cir.), 237 F. 2d 135; *Davis v. City of New York* (C. C. A. 2nd), 119 F. 2d 559. Cf. *United States v. Gilbert Associates,* 345 U. S. 361, 97 L. Ed. 1071, and *Lochner v. Moreland* (4th Cir.), 192 F. 2d 985, 987.

Nor do we reach the question whether when Section 6323 says the Federal lien shall not be valid as against "any mortgagee" until notice of the lien has been filed, it includes a mortgagee under an unrecorded mortgage; that is, whether a nonstatutory contractual lien must be choate and perfected to prevail. The Supreme Court has never given an explicit answer. In *United States v. Ball Construction Co.,* 355 U. S. 587, 594, 2 L. Ed. 2d 510, 515, an assignment by a subcontractor to a surety company was involved. The District Court and the Court of Appeals held the assignment to be a chattel mortgage under State law and, even though unre-

corded, to be superior to the Federal tax lien on the property of the sub-contractor. Five Justices of the Supreme Court reversed in a four-line per curiam, saying that since the "instrument" was inchoate the statute preferring named claimants did not apply. The majority did not characterize the assignment as a mortgage and the citations relied on were cases involving non-contractual liens. It would seem to be more likely than not (although not clear), that the majority were of the opinion the assignment was not a mortgage within the meaning of the federal statute preferring mortgages to unfiled Federal tax liens.

Justices Whittaker, Douglas, Burton and Harlan dissented on the view that the assignment was in legal effect a mortgage, and since it antedated the filing of the Federal lien it was superior to it. Justice Whittaker said for the dissenters that the unrecorded mortgage was specific, choate and valid between the parties as of its date and, "inasmuch as it antedated the filing of the federal tax liens it was expressly made superior to those liens by the terms of § 3672 (a) [Section 6323 I. R. C.]."

The lower Federal Courts and the commentators have not agreed on the meaning to be given the *Ball* case. Typical is the reaction of the appellate Judges of the Fourth Circuit, expressed in *United States v. Bond*, 279 F. 2d 837, certiorari denied, 5 L. Ed. 2d 189. Judges Boreman and Sobeloff read the *Ball* case as confirming that only a technically choate and perfected State lien will prevail over a Federal tax lien and as showing that this test, first made applicable in insolvency cases and then in statutory lien cases, has now been extended to non-statutory contractual lien situations. Judge Haynsworth disagreed, feeling that the *Ball* case did no more than hold the assignment was not a mortgage.

Other lower court Federal Judges generally seem to have inclined to Judge Haynsworth's views.

In *United States v. Eagle* (D. C. E. D. S. C. 1959), 59-2 U. S. T. C., Paragraph 9656, the United States was held not to be a protected creditor in respect of its tax lien vis a vis a State statute, preferring those who deal with and trust the

debtor after the execution of the unrecorded mortgage. Reliance was put on *United States v. Anders Contracting Co.* (D. C. W. D. S. C.), 111 F. Supp. 700, which held that a conditional sales contract, classed as a chattel mortgage under South Carolina law, which was valid between the parties need not be recorded to be effective against the Government's tax lien. Judge Wyche concluded that the *Ball* case held that the assignment was not a mortgage and that the opinion of the minority gave support to the conclusion he had reached in *Anders* and in *Eagle*. The same conclusion has been reached by District Judges in *Cauvey v. Basin Rig and Trucking, Inc.* (D. C. N. D.), 185 F. Supp. 374, 377 (1960), and *Diamond T. Motor Co. v. Allen, District Director,* 60-2 U. S. T. C., Paragraph 9557 (D. Ct. Colo.). The Government did not appeal *Anders* or *Eagle* and has announced it will not appeal *Diamond T.* Cf. *United States v. Torres* (D. C. Md. by Soper, J.), 291 F. 138, 141, a pre-*Ball* case.

There are other pre-*Ball* cases holding that an unrecorded mortgage will not prevail over a Federal tax lien. Some are referred to in the *Plaza-Alban* case at page 592 of 219 Md. Generally they are applying laws of states which make the unrecorded mortgage void rather than ineffective as to specified creditors. The answer to whether the unrecorded mortgage prevails over the Government tax lien can be finally and definitely given only by the Supreme Court. An able and interesting discussion of the cases and the problem is to be found in *"Applicability of the 'General and Unperfected Lien' Doctrine to Contractual Liens,"* 43 Minn. L. Rev. 755.

We turn to the other Sections of the Bankruptcy Act relied on by the trustee in bankruptcy.

Section 70 (c) (11 U. S. C. A., Sec. 110 (c)), unlike Section 70 (e) which requires an actual lien creditor, gives the trustee the rights of an hypothetical or ideal lien creditor upon property in which the bankrupt has an interest or as to which he may be the ostensible owner. In *Lewis v. Manufacturers Nat. Bank,* 364 U. S. 603, 5 L. Ed. 2d 323, 326, decided after the decision in this case below and shortly before argument in this Court, the Supreme Court held that

under Section 70 (c) : "The rights of creditors—whether they are existing or hypothetical—to which the trustee succeeds are to be ascertained as of 'the date of bankruptcy,' not at an anterior point of time. That is to say, the trustee acquires the status of a creditor as of the time when the petition of bankruptcy is filed."

In the case before us the trustee acquired his status as a creditor under Sec. 70 (c) sixteen months after the chattels had been sold and ten months after the sale had been finally ratified and confirmed. As of bankruptcy there was no property as to which a creditor (and, so, the trustee) could acquire a lien. As the chancellor below, artfully anticipating the *Lewis* decision, aptly and accurately observed: "The Act creates a hypothetical creditor even though no such creditor actually exists, but it has not undertaken hypothetically or otherwise to create property where none exists." The trustee has no right under Section 70 (c).

Under Section 70 (a) (11 U. S. C. A., Sec. 110 (a)), the trustee is vested with the title of the Bankrupt, as of the date of the filing of the petition, to "(5) property * * * which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him * * *." When the petition was filed Gaither did not own the mortgaged chattels and had no interest in them which it could have transferred or which might have been levied upon or sold. Bankruptcy came many months too late for this.

Section 60 of the Bankruptcy Act (11 U. S. C. A., Sec. 96) deals with preferential transfers of the debtor, while insolvent, to or for the benefit of a creditor of an antecedent debt. Sub-section (a) (2) provides that if such a transfer is not so perfected prior to the filing of the petition in bankruptcy that "no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee," the transfer shall be deemed to have been made immediately before the filing of the petition.

The chancellor found, with substantial reason, we think,

that there was no proof of Gaither's insolvency before bankruptcy. The petition was filed in April 1958. At that time the transfer of Gaither's property to bona fide purchasers for value had been an accomplished fact, fully perfected for some ten months. Section 60 is of no avail to the trustee.

The dismissal below of the trustee's petition was proper.

*Decree affirmed, with costs.*